## JOHN H. BAUCH et al., Respondents, v. THE CITY OF CABOOL et al., Appellants.

Springfield Court of Appeals, June 3, 1912.    Motion For Rehearing Denied, July 9, 1912.

1. MUNICIPAL CORPORATIONS: Elections: Validity of Bonds: Evidence as to Number of Qualified Voters. In an action against the mayor and board of aldermen of a city of the fourth class to restrain the issuing of bonds that had been voted for the purpose of erecting waterworks to be owned by the city, the points made against the validity of the election at which these bonds were voted, were *held* against the contention of the plaintiffs; but it was further *held* that the trial court erred in refusing to admit oral testimony to determine who were the qualified voters of the city and whether or not two-thirds of the qualified voters of the city had voted in favor of the bond issue.

2. ———: ———: ———: Notice of Election: Proclamation of Mayor. Where the board of aldermen of a city of the fourth class orders a special election to vote on a bond proposition and fixes the date upon which such election is to be held, and directs the mayor to issue a proclamation calling the election for that time, and for that purpose, and the proclamation of the mayor shows that it was issued by order of the board of aldermen, it is not subject to the objection that the power to call the election was delegated to the mayor.

3. ———: ———: ———: ———: Designating Newspaper. Where the board of aldermen of a city of the fourth class orders an election to be held to vote on a bond proposition, and fixes the date for holding such election, and authorizes the mayor to issue the proclamation, giving notice thereof, and such proclamation was issued and published the required time in a newspaper, the fact that the council did not designate the newspaper in no wise invalidated the election.

4. ———: ———: ———: ———: Polling Places: Presumption as to Regularity. Where the notice of a special election to vote on a bond proposition in a city of the fourth class, notifies the holders that the election would be held at the usual voting places in the city, the presumption will be, in the absence of testimony to the contrary, that the board of aldermen had selected and specified the polling places, as required by the statute (Revised Statutes 1909, section 9302) and that such election was held at the usual voting places in the city.

5. **OFFICERS: Presumptions.** It will be presumed that public officers have performed their duty.

6. **MUNICIPAL CORPORATIONS: Elections: Bonds: Publication of Notice.** The notice of a special election in a city of the fourth class to vote on a bond proposition was published but once in a newspaper in such city. *Held*, that one publication was sufficient.

7. ———: **Bonded Indebtedness: Merchants' Stock: Taxable Property.** In view of section 11623, Revised Statutes 1909, which was enacted in 1895, and which plainly provides that stock of merchants shall be included and made a part of the total valuations of property taxable for all purposes, such property may be included in determining the tax valuation of a city of the fourth class, so as to determine whether or not the bonded indebtedness of such city is in excess of the constitutional limit.

8. ———: **Elections: Attacking Validity: Burden of Proof.** In a suit against the mayor and board of aldermen of a city of the fourth class to enjoin the issuance of certain bonds, the plaintiffs alleged in their petition that the election at which said bonds were voted was void for the reason that two-thirds of the qualified voters did not vote in favor of the issuance of said bonds. By general denial the defendants denied this allegation. *Held*, that the burden was upon the plaintiffs to prove this fact.

9. ———: ———: **Authorizing Bond Issue: Two-thirds of Legal Voters Must Assent.** Section 9385, Revised Statutes 1909, requires a vote of two-thirds of the legal voters of a city of the fourth class to assent to the issuance of bonds for the purpose of erecting waterworks and not merely two-thirds of those voting at the election.

10. ———: ———: ———: **Evidence as to Number of Qualified Voters.** Any legitimate testimony is admissible in determining who were the qualified voters of a city at the time of holding a special election to vote on the proposition of issuing bonds in a case where the validity of the bonds are assailed in a proceeding to prevent their issuance.

11. ———: ———: ———: ———. When the city council of a city of the fourth class, by ordinance determines that two-thirds of the qualified voters of the city had voted in favor of a bond issue, the plaintiffs who sought to enjoin the issuance of said bonds did not prove that two-thirds of the qualified voters of the city had not voted in favor of the bond issue, by simply showing that according to an election held fourteen months before the proposition was short seven votes of the necessary two-thirds.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED AND REMANDED.

*Dooley & Hiett* and *W. E. Barton* for appellants.

(1) Order calling the election sufficient, the statute only requires the board to make an order. State ex rel. v. Allen, 178 Mo. 555; State v. Armstrong, 140 Mo. App. 721; R. S. 1909, sec. 9545. (2) Notice of election was given by mayor's proclamation, which was sufficient. State ex rel. v. Gordon, 217 Mo. 110; Oloughlin v. Kirkwood, 107 Mo. App. 302; Ex parte Leach, 149 Mo. App. 326; State v. Dugan, 110 Mo. 146. (3) The designation at the usual voting places in the city of Cabool, Missouri, is a sufficient designation of a voting place. Evans v. McFarland, 186 Mo. 709; State ex rel. v. Allen, 178 Mo. 555; 10 Cyc. 626; Patton v. Watkins, 90 A. S. R. 76. (4) In order to annul the result of an election it must be shown that some mandatory statute has been violated, or that the election was conducted in such an irregular manner that the true sentiment of the voters was not expressed by it. Skelton v. Ulen, 217 Mo. 383; Bowers v. Smith, 111 Mo. 45; Ex parte Leach, 149 Mo. App. 329. (5) One publication of the mayor's proclamation giving notice of election was sufficient. Southworth v. Glasgow, 232 Mo. 108. (6) It was not necessary for the board of aldermen to designate the paper in which the notice of election was published. The board had a right to and did delegate the selection of the newspaper to the mayor. Ex parte Leach, 149 Mo. 329. (7) Merchant's property should be considered in computing the taxible property of the city of Cabool for the basis on which a levy of five per cent could be made for the purpose of issuing the waterworks bond. R. S. 1909, sec. 11623. (8) Where the statute did not provide that the legal voters should be taxpayers it has been

held that to determine whether proposition carried or not the officers should look only to the election returns, and accept the testimony of the ballot box as conclusive on the subject. Carroll County v. Smith, 111 U. S. 556, 28 L. Ed. 517; Cass County v. Johnson, 95 U. S. 260, 24 L. Ed. 416; Lawrence v. Ingersol, 6 L. R. A. 308; Bryan v. Stephenson, 35 L. R. A. 572; In re Denny, 51 L. R. A. 725; State ex rel. v. Mayor, 37 Mo. 270. (9) When the board of aldermen were by the Legislature given the power in some manner to determine whether two-thirds of the legal voters of the city had given their assent to the issue of the waterworks bond, the Legislature conferred on the board of aldermen a judicial and not merely a ministerial power. A power requiring evidence of some kind to determine and discretion in deciding and its decision in the matter in the absence of fraud is beyond the control of the courts. State er rel. v. Steers, 44 Mo. 223; State er rel v. Garesche, 3 Mo. App. 544; 10 Cyc. 803; State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. State Board of Health, 103 Mo. 222; State ex rel. v. Oliver, 116 Mo. 188; State ex rel. v. St. Louis, 158 Mo. 505; Paving Co. v. French, 158 Mo. 534; Prior v. Buehler Co., 170 Mo. 451. (10) The well settled presumption of the regularity of official action and that all things required to be done by the board of aldermen in determining whether two-thirds of the legal voters of Cabool voted for the issue of bonds was done and done rightly, applies to the action of the board of aldermen in passing the ordinance, finding that two-thirds of the legal voters of the city of Cabool had so voted. In re Bothwell, 44 Mo. App. 222; State ex rel. v. St. Louis, 174 Mo. 136; State ex rel. v. St. Louis, 169 Mo. 31; Paving Co. v. Handlan, 150 Mo. App. 246; Cox v. Mignerry Co., 126 Mo. App. 679; Quinn v. Schneider, 118 Mo. App. 39. (11) A party attacking a municipal ordinance on the ground that it was not passed as required by law must allege and

the burden is on him to prove such to be a fact. Cox v. Mignerry Co., 126 Mo. App. 682. (12) Section 9547, Revised Statutes 1909, does not require the proper officers of a city or town to pass an ordinance finding that two-thirds of the legal voters of a city voted at the election at the time they canvassed the vote, and though it did, such provision is not mandatory and the failure to observe it would not defeat the ordinance. St. Louis v. Foster, 52 Mo. 513; Water Co. v. Aurora, 129 Mo. 140; State ex rel. v. Gordon, 217 Mo. 103.

*Lamar, Lamar & Lamar* for respondents.

(1) The board of aldermen alone had the power to call an election and to designate a paper or medium in which notice thereof should be given. They cannot delegate this power to anyone else, and their failure to call such election and to make such designation renders the election void. When the time and place of holding an election are not fixed by law, but the election is to be called and the time and place fixed by some authority named in the statute, it is essential to the validity of such election that it be called and the time and place of holding it be fixed by the very agency designated by law and by none other. 15 Cyc., 322; 1 Dillon on Mun. Corp. (4 Ed.), sec. 96; State v. Gatlin, 143 Mo. App. 605; State v. Baldwin, 109 Mo. App. 578; Martin v. Bennett, 139 Mo. App. 244; Blickensderfer v. Hanna, 231 Mo. 109. (2) Section 9302 provides, ''The polling places for an election in cities of the fourth class shall be selected and specified by the respective boards of aldermen of such city by resolution, ordinance or otherwise.'' This is mandatory and a duty which the board of aldermen cannot delegate. Martin v. Bennett, 139 Mo. App. 237; Thornburg v. School District, 175 Mo. 12. (3) The powers of a municipal corporation will be strictly con-

strued and if there be any reasonable doubt of the existence of the power, it will be denied. 28 Cyc., 1575; 1 Dillon on Mun. Corp. (4 Ed.), secs. 89, 509; 38 Cyc., 647; Carthage v. Light Co., 97 Mo. App. 20; Knapp v. Kansas City, 45 Mo. App. 485; Kansas City v. Lorber, 64 Mo. App. 608; Carpenter v. Lathrop, 51 Mo. 492. (4) The Constitution or statutory language, "two-thirds of the legal voters of a city or a county, etc., has been repeatedly construed by the courts in this state and is now firmly established beyond question to mean two-thirds of all those who are entitled to vote and not merely two-thirds of those who did vote at an election. School District v. Oellien, 209 Mo. 464; State ex rel. v. White, 162 Mo. 539; State ex rel. v. Kansas City, 233 Mo. 192; State ex rel. v. Francis, 95 Mo. 51; State ex rel. v. Frances, 144 U. S. 210, 36 L. Ed. 407; State ex rel. v. Brasfield, 67 Mo. 339; State ex rel. v. Harris, 96 Mo. 38; State ex rel. v. Sutterfield, 54 Mo. 391; Dunn v. Lott, 58 S. W. (Ark.) 375; Hedrick v. Culberson, 56 S. W. (Tex.) 616; Harsman v. Bates, 2 Otto, 569. (5) Merchants' stocks of goods are not to be included in this valuation. They are in the nature of a license tax. R. S. 1909, sec. 11618; State ex rel. v. Allen, 116 Mo. 23; Thornburg v. School District, 172 Mo. 31.

GRAY, J.—In May, 1911, a petition was presented to the board of aldermen of the city of Cabool (a city of the fourth class) asking the board to call an election to vote on a proposition to issue bonds to obtain money to be used in constructing waterworks in said city. The board made the following order on the petition: "Whereupon it is by the board ordered that the mayor be, and is hereby directed to call by proclamation, an election to be held on the sixth day of June, 1911, to vote for or against the issue of eighteen bonds, each for the sum of $500, due twenty years after date, bearing interest at the rate of six per cent

per annum, payable annually, and the proceeds to be applied to the building and putting in operation a system of water works for the use of the city." At the same time the board named the judges for the election.

Pursuant to the order, the mayor issued a proclamation notifying the voters that a special election would be held "at the usual places of voting in the city of Cabool, Mo., on the 6th day of June, 1911, for the following purposes:

"First. To vote for or against the proposition to issue bonds in the sum of $9000 due twenty years from date and bearing six per cent interest per annum, for money to erect and put in operation a system of waterworks for the city of Cabool.

"Second. To elect a city marshal to serve the unexpired term of R. L. Martin, resigned.

"By order of board of Aldermen.

"J. W. Patton, Mayor.

"Attest: J. W. Mires, City Clerk."

This proclamation was published but once, and that on the 18th day of May, 1911, in a weekly newspaper published in the city. The election was held, resulting in 102 votes in favor of the proposition, and thirty-seven against it. The number of votes polled was only a few less than polled at the previous general election in the city. The board of aldermen met two days after the election and proceeded to inspect the returns, and found that 102 votes were cast in favor of the proposition, and thirty-seven against it, and declared that more than two-thirds of the votes cast were in favor of issuing the bonds. This meeting was an adjourned meeting, and on the 3rd day of July, 1911, at a regular meeting, Ordinance No. 50 was passed, reciting: "Whereas, this board of aldermen did on the 16th day of May, 1911, make an order for a special election to be held on the 6th day of June, 1911, by the qualified voters of the city of Cabool, Mis-

souri, for the purpose of voting on the question of issuing bonds and building waterworks in said city of Cabool, and whereas, at the adjourned meeting of said board held on the 8th day of June, 1911, for the purpose of counting the votes cast at said election, it was found that more than two-thirds of said voters were in favor of the issue of bonds for the establishment of waterworks.''

It appears that a copy of this ordinance was sent to the purchaser of the bonds, who was not satisfied with its recital regarding the number of votes cast for the bonds, and returned it with a new ordinance No. 51, for the board to pass, and which was duly passed at a regular meeting on the 4th day of September, 1911.

Section 1 of this ordinance reads: ''That at the special election held in the city of Cabool, Missouri, on the 6th day of June, 1911, more than two-thirds of the legal voters of the said city voted in favor of the issuance of bonds of said city in the amount of nine thousand dollars for the purpose of erecting waterworks to be owned by said city.'' And then follows the statement that in pursuance to the said vote of the legal voters of the city the bonds are directed to be issued and negotiated.

Before the bonds had been delivered, this suit was instituted by twelve taxpaying citizens of the city, against the city, mayor and board of aldermen, to restrain the issuing and delivering of the bonds. The cause was tried at the November term, 1911, of the Texas County Circuit Court, resulting in a judgment in favor of the plaintiffs, and enjoining the defendants from selling or negotiating the bonds. From the judgment, defendants appealed to this court.

It is first claimed the election was illegal because the board of aldermen alone had the power to call it and to designate the paper in which notice thereof should be given, and that the board could not delegate

this power to the mayor. We do not construe the minutes of the board of aldermen as delegating to the mayor the power to call the election. The board named in the minutes the date for the election and the purpose for which it was to be held, and directed the mayor to issue a proclamation calling the election for that time and for that purpose; and the prolamation of the mayor shows that it was issued by order of the board of aldermen. This election was called in the same manner that such elections are always called. The board names the time, place and purpose of the election, and directs the mayor to issue the proclamation giving notice thereof.

It is next claimed that the board should have named the newspaper, and could not delegate that duty to the mayor. The statute governing the notice for such elections is section 9545, Revised Statutes 1909, and it is therein provided that the notice of such election shall be given not less than fifteen days previous thereto, by publication in some newspaper published in the city.

This court, in Ex parte Harvy Leach, 149 Mo. App. 317, 130 S. W. 394, held that where the notice prescribed by the statute was given for the proper length of time, the fact that the council ordering the election did not designate the newspaper, in no wise invalidated the election. Our decision was in conflict with certain decisions of the Kansas City Court of Appeals, and therefore, we transferred the case to the Supreme Court, and in an opinion reported in the 231 Mo. 586, 132 S. W. 1075, the decision of this court was upheld, and the conflicting cases overruled.

The third objection to the election, is, that the board of aldermen did not fix the polling places. Section 9302 of the Revised Statutes, relating to cities of the fourth class, provides that the polling places for an election in such cities shall be selected and specified by the respective boards of aldermen of such city,

by resolution, ordinance, or otherwise.  It requires no citation of authorities to support the proposition that it will be presumed that public officers have performed their duties, and it must be presumed, therefore, in the absence of testimony to the contrary, that the board of aldermen of the city of Cabool had performed this statutory duty, and the mayor's proclamation notified the voters that the election would be held at the usual voting places in the city.  The usual voting places in the city, in the absence of testimony to the contrary, must be presumed to be the regularly selected places, and therefore, it cannot be said that this election was not held at the usual voting places in the city.  In addition to this presumption, there was testimony to the effect that the election was held at the polling places where elections had been held for about three years previous to the time of this election.  The city of Cabool is a small place, and as said by Judge Goode, in O'Laughlin v. Kirkwood, 107 Mo. App. 302, 81 S. W. 512: "In a small town voters have no difficulty in learning where polling places are, unless the polls are concealed or the voters misled; and it is not asserted that either of those things was done in this instance."

In State ex rel. v. Allen, 178 Mo. 555, 77 S. W. 868, the court passed on the validity of a special election held in the town of Canton.  The town, previous to the election, had been divided into four wards, but there was an ordinance requiring that all special elections be held at one place and at some point to be designated by the mayor.  The special election was held in each of the wards in the city, and it was claimed that on account thereof, the election was illegal, but the court said: "There is no pretense that the election was fraudulent, or that the result was not a fair expression of the people.  It was nothing more than an irregularity, and should not, under the circumstances, be held to invalidate the election, or discredit

the bonds." To the same effect is the opinion of this court in State ex rel. Fahrman v. Ross, 143 S. W. 502.

The notice was published but once, and it is claimed that it should have been published in other issues of the paper. In Southworth v. Glasgow, 232 Mo. 108, 132 S. W. 1168, this point is decided against the plaintiffs.

'It is claimed that the bonds are illegal because in excess of five per cent of the assessed valuation of the city. It is conceded if the merchants' assessments are properly included in the assessed valuation of the town, then the indebtedness is not in excess of the constitutional limit. In State ex rel. Allen v. Railroad, 116 Mo. 15, 22 S. W. 611, and Thornburg v. School District, 175 Mo. 12, 75 S. W. 81, the Supreme Court held that such property is not to be included. In Southworth v. Glasgow, 232 Mo. 108, 132 S. W. 1168, the question was again before the court, but not directly passed on. The decisions in the Allen and Thornburg cases were based upon the statutes as they then existed. Under those statutes, the merchants' goods were never listed on the assessor's books, nor had the assessor or the board of equalization anything to do with them, and it was for this reason that the court in the Allen case held that the merchants' property was not to be included. The court said: "The merchant is required to file a sworn statement with the county clerk, on the first Monday in June in each year, of the greatest amount of goods on hand at any time between the first Monday in March and the first Monday in June next preceding; and upon this statement the tax is directly levied. The merchant's goods and stock in trade never go on the assessor's books at all, nor has the assessor anything whatever to do with it. Neither the assessor or the board of equalization ever act upon it in any manner."

In 1895 the statute was repealed and a new one enacted, which is now section 11623, Revised Statutes 1909. By this statute, it is the duty of the merchants to furnish the assessor the statements and it is the duty of the assessor to enter such statements in a book prepared for that purpose, and the assessor is required to verify the book by making oath that he has made diligent effort to secure the sworn statement from all merchants in the county. The book is to be returned by the assessor to the board of equalization, whereupon, the board is required to equalize the valuation of merchants' stocks in the same manner as assessments of real and personal property are equalized. After the board of equalization has completed the equalization of such statement, the county clerk is required to extend the proper taxes at the same rate as assessed for the time on real estate, and to deliver the books to the collector, who is charged with the collection of the taxes. The county assessor is paid twenty-five cents for each merchant's statement, and the statute then provides: "And the sum of the valuation of the statements as equalized by the county board of equalization shall be included in and made a part of the total valuation of property taxable for all purposes."

The language just quoted is of prime importance in determining the question, and, perhaps, was put in the section in view of the decisions of the Supreme Court just cited. This language plainly provides that the valuation of the merchants' property as equalized by the county board of equalization, shall be included in and made a part of the valuation of property taxable for all purposes.

In the Allen case, it was claimed by counsel that the argument of the court sustaining the exclusion of merchants' statements would also exclude the valuation of railroad and telegraph property. But the court said that by the provisions of the statute the

165 Mo. App.—32

county court was required, upon receipt from the auditor of the certificate of railroad assessments, to ascertain and levy the taxes for state, county and other purposes on the railroad property in such county, at the same rate as may be levied on other property, and to make an entry thereof in the records of the court, and that the statute expressly provided that in respect to railroad property, the levy shall be made by the county court, and the evident intention of the legislature thereby was that such properties should go into and become a part of the general wealth of the county for revenue purposes. This is exactly what the new statute regarding merchants' taxes provides. In the previous cases the courts did not contend or hold that merchants' stocks were not property, but they were not assessed as part of the taxable property of the county, and therefore, were not included in determining the total assessed valuation. But with the amendment plainly providing that the same shall be included and made a part of the total valuation of property taxable for all purposes, no good reason can be assigned for excluding such property in determining the tax valuation of a city or county, as the case may be.

The last and most important of plaintiff's contentions, is, that two-thirds of the qualified voters of the city did not vote in favor of the bond issue. The evidence on this point is in a peculiar condition. The plaintiffs offered several witnesses, who testified that certain qualified voters of the city did not vote at the election, but on the request of the defendants, all this testimony was excluded, upon the ground that such facts could not be shown by oral testimony.

After the plaintiffs closed, and while defendants were offering their testimony, they offered to show, by oral testimony, how many voters were in the city at the time of the election, but this time plaintiffs objected to the introduction of the testimony, and their objection was sustained. It is conceded that two--

thirds of the votes cast were in favor of the proposition, and it is claimed that two-thirds of the qualified voters of the city so voted, but this is denied by the plaintiffs. The plaintiffs alleged in their petition that the election was void, for the reason that two-thirds of the qualified voters did not vote in favor of the issuance of said bonds. By general denial, the defendants denied this allegation, and therefore, the burden was upon the plaintiffs to prove this fact, and with the oral testimony excluded, there was no proof sufficient to authorize the court to declare the election void for this reason.

It is true, the board at its adjourned meeting held two days subsequent to the election, did not affirmatively find that two-thirds of the voters of the city had voted in favor of the proposition, but they did not find to the contrary. At a regular meeting held on the third day of July, 1911, the board, by ordinance, declared that an election by the qualified voters of the city, had been ordered and held, and found that more than two-thirds of said voters were in favor of the bond issue, and this was determined by counting the votes cast at the election. The language on this point not being as clear as the bond purchaser desired, the board again, by ordinance No. 51, expressly found and declared that more than two-thirds of the legal voters of the city voted in favor of the issuance of the bonds. Section 9302, Revised Statutes, regarding the manner of making the returns of elections in cities of the fourth class, provides: "The manner of making returns of such elections shall be prescribed by ordinance." If we hold this provision applies to special elections for bond issues, then we must presume, in the absence of testimony to the contrary, that the returns and the decision of the board thereon, were made in accordance with an ordinance. On the other hand, if there was no ordinance in the city, then if the board, in any fair and honest manner, cast up and declared

the returns of the election, and declared the result, it should be upheld by the court,. and especially is this true where no fraud is alleged or claimed. But as this is an equity case, and if reversed and remanded, this question will come up again, it is proper that another phase of it be considered, and this is: Does the law require two-thirds of the voters of the city shall vote in favor of the proposition to carry it?

By section 12, article 10, of the State Constitution, cities are allowed to become indebted to an amount exceeding the income and revenue provided for such year, when two-thirds of the voters thereof voting at an election to be held for that purpose, authorize such indebtedness. This section of the Constitution does not require a two-thirds vote of all the qualified voters of the city, but only two-thirds of those voting. State ex rel. v. Kansas City, 233 Mo. 162, 134 S. W. 1007. This constitutional provision does not expressly authorize the increase of municipal indebtedness whenever an election has been held and the proper majority in favor of the proposition secured, but it simply provides that cities shall not be permitted to increase their indebtedness beyond certain revenues, unless authorized by a vote, and it has been expressly held in this state, that the Legislature may require an additional vote to authorize such indebtedness. [State ex rel. v. White, 162 Mo. 533, 63 S. W. 104.] And it is claimed by the plaintiffs that the Legislature has so declared by section 9383, Revised Statutes 1909, relating to cities of the fourth class. This section provides: "The board of aldermen shall have power to borrow money and issue bonds for the payment thereof, within the limits prescribed by the Constitution, for the purpose of erecting waterworks. . . . But such bonds shall not be issued until two-thirds of the legal voters of such city have assented thereto in accordance with article 7, chapter 84, Revised Statutes 1909."

The sections referred to and forming a part of said article 7, are 9544 to 9548, inclusive, Revised Statutes 1909. These sections provide that a city may contract a debt in excess of the annual income and revenue for any year, for any purpose authorized in its charter upon the assent of two-thirds of the legal voters of such city, town or village voting at an election held for that purpose. Section 9545 provides for the manner of ordering and holding the election; 9546. the form of the ballot; and 9547, the making of the returns, declaring the result, and authorizing the issuing of the bonds.

The plaintiffs claim that section 9383 requires a vote of two-thirds of the legal voters of the city, and not simply of those voting at the election. This section of the statute is not an old one, and was enacted at a time when the decisions of the Supreme court regarding the language used, were well known, and it is probable, therefore, that the Legislature used the language advisedly and with the intent that it should be construed as it reads and as understood at the time, and that it was the intention that to authorize an increase of the indebtedness of the city, the assent of two-thirds of the qualified voters of the city should first be obtained.

The only doubt there is about the meaning of the statute, is created by the following words at the end thereof, "in accordance with article 7, chapter 84, Revised Statutes 1909." In other words, if the statute closed with the words, "but such bonds shall not be issued until two-thirds of the legal voters of such city have assented thereto," there would be no question but what two-thirds of all the voters of the city was meant. It is but a fair construction to say that the words, "in accordance with article 7, chapter 84, Revised Statutes 1909," have reference to the manner of holding, conducting and determining the result of

the election, and do not qualify the previous part of the section as to the vote required.

The defendants contend that even though the statute requires a two-thirds majority of all the voters of the city, yet as there was no registration and no way to determine by law, who were and who were not qualified voters, the vote at the election is conclusive as to the number of qualified voters of the city. There is some authority in this state for the proposition. [State v. Mayor of St. Joseph, 37 Mo. 270; State v. Binder, 38 Mo. 450; Richardson v. McReynolds, 114 Mo. 641, 21 S. W. 901; Tucker v. McKay, 131 Mo. App. 728, 111 S. W. 867.]

In State v. Mayor of St. Joseph, supra, a petition for mandamus to the mayor of St. Joseph, requiring him to sign certain bonds of the city, was filed and a return made thereto. The charter of St. Joseph provided that to authorize a debt, the proposition had to be submitted "to a vote of the qualified voters of said city," and in all such cases it should require "two-thirds of such qualified voters to sanction the same." The court held that it was sufficient that two-thirds of the qualified voters who voted at the election, authorized the bond issue, and said: "This was the mode provided by law for ascertaining the sense of the qualified voters of the city upon that question. There would appear to be no other practicable way in which the matter could be determined."

In State v. Binder, supra, it was expressly held that although to authorize the doing of a certain act, the assent of a majority of the voters of the city must be obtained, yet in determining that question, the vote at the election was the proper evidence, and the court said in reviewing the case of State v. Mayor: "An election of this kind, authorized for the very purpose of determining the question on proper notice given, was the mode contemplated by the Legislature as well as by law for ascertaining the sense of the legal vot-

ers upon the question submitted, and that there could not well be any other prescribed way in which such matter could be determined. And certainly, in the absence of any evidence to the contrary, it may be presumed that the voters voting at an election so held were all the legal voters of the city.''

These decisions are based on the principle that where there is no registration, it is a difficult proposition to tell who really were the qualified voters at a certain previous time, and therefore, it must be determined by the number actually attending and voting at the election.

In the subsequent cases of State ex rel. v. Sutterfield, 54 Mo. 392, and State ex rel. Woodson v. Brassfield, 57 Mo. 331, the Mayor and Binder cases are reviewed, and while criticised, are not overruled. But in those cases, there were previous registrations, and they were looked to and held proper to be considered in determining the question whether the proposition carried by the required majority.

In the Woodson case, Judge Hough, in a dissenting opinion, held that even the inquiry was not limited to the previous registration, but that any legitimate testimony that tended to prove that the proposition was or was not carried by the proper majority, was admissible. It was further held, by both majority and minority opinions, that the cases of State v. Mayor and State v. Binder, were properly determined on the facts before the court, because the only evidence as to the number of qualified voters in the cities, was the returns from the special elections themselves.

The question has been before the court in State ex rel. Allen v. Mayor, 73 Mo. 435; State ex rel. v. Harris, 96 Mo. 29, 8 S. W. 794; State ex rel. v. White, 162 Mo. 533, 63 S. W. 104; Russie v. Brazzell, 128 Mo. 93, 30 S. W. 526. And an examination of all these cases will, we believe, establish the rule that any legitimate testimony is admissible in determining who

were, at the time of the election, the qualified voters of the city. This, of course, must be limited to cases where the validity of the bonds are assailed in a proceeding to prevent their issue, and before they have passed into the hands of innocent purchasers for value, when other questions must be considered in determining the point.

As we have heretofore stated, the evidence as to the number of voters in the city on the day of the special election, is in a peculiar situation. When the court excluded all the oral testimony offered by plaintiffs tending to show who were qualified voters in the city, plaintiffs did not object and saved no exception, and when defendants offered to show by such testimony how many voters were in the city at that time, the plaintiffs objected, and their objection was sustained, and the defendants excepted to the action of the court.

The authorities agree there is a presumption that the voters voted at an election, and the burden is upon the person denying this fact to prove it. The plaintiffs alleged in their petition that two-thirds of the qualified voters did not vote in favor of the issuance of said bonds. With the oral testimony out of the case, there was no testimony on this point offered except the returns from a general election held in the city in April, 1910, showing that 164 persons voted at that election. As the proposition to issue the bonds received 102 votes, it only lacked seven votes of receiving two-thirds majority, as shown by the election in April, 1910. Now when the city council, by ordinance, determined that two-thirds of the qualified voters of the city had voted in favor of the bond isssue, on June 6, 1911, the burden was on plaintiffs to prove htat this was not the fact, and they failed to do so by simply showing that according to an election, held fourteen months before, the proposition was short seven votes of the necessary two-thirds majority, and

the court, on this evidence, was not justified in declaring that the proposition did not receive the requisite majority.

This is a matter of importance to the citizens of Cabool, and the bonds should not be issued unless authorized by the requisite number of legal voters, and in as much as the record shows the case was tried on the theory that oral testimony was not admissible to determine who were the qualified voters of the city, we will not reverse with directions to dismiss the bill and dissolve the injunction. The justice in our position is emphasized when we consider the fact that there were in the city at least 164 legal voters in April, 1910, and that if such a number were there in June, 1911, the bond proposition failed to carry at the election held on that day. We will therefore reverse the judgment and remand the cause, in order that this question may be determined. All concur.

