STATE EX REL. CITY OF FULTON, a Municipal Corporation, Relator, v. FORREST SMITH, State Auditor.—No. 39843.—194 S. W. (2d) 302.

Court en Banc, April 30, 1946.

28

*T. A. Faucett* for relator.

*J. E. Taylor*, Attorney-General, and *Drake Watson*, Assistant Attorney General, for respondent.

30

*D. C. Chastain* and *A. Z. Patterson* amici curiae.

▇▇▇ LEEDY, J.—By this original proceeding in mandamus the City of Fulton seeks to compel the State Auditor to register Bond No. 1 of a series of 1¼% revenue bonds of said city issued for the purpose of paying a part of the cost of extending and improving its municipally owned combined water and ▇▇▇ electric light works, and thus test the validity of said bond issue. The questions presented are issues of law, the facts having been admitted.

The city determined the necessity of extending and improving the plant or works in question at an estimated cost of $426,000.00, of which the sum of $226,000.00 (derived from the revenues of said plant) is on hand. The balance of the estimated cost, to-wit, $200,000.00 the city proposes to finance by the issuance and sale of the revenue bonds in question which are payable, as to both principal and interest, solely from revenues derived from the operation of said plant.

The bonds were voted at a special election held December 11, 1945, pursuant to Ordinance No. 1091 (duly passed and approved November 13, 1945), which provided for the submission to the qualified voters of the city of the single proposition following:

"Shall the City of Fulton, Missouri, issue and sell its negotiable interest bearing revenue bonds in the principal amount of Two Hundred Thousand Dollars ($200,000) for the purpose of paying part of the cost of extending and improving the revenue producing water and electric light works, owned exclusively by said City, the cost of operation and maintenance of said water and electric light works and the principal of and the interest on said revenue bonds to be payable solely from the revenues derived by the City of Fulton from the operation of said water and electric light works?"

The proceedings had in connection with the calling of the election, in the giving of the notice thereof, in the holding of said election, in the certification of the returns thereof and the declaration of the returns thereof were in accordance with the provisions of Secs. 7368-7372,[1] both inclusive, except as to the form of ballot used, which will be hereinafter noticed.

In conformity with the terms of Ordinance No. 1093, adopted December 21, 1945, under which the bonds were issued, said bonds are of the denomination of $1,000.00 each, numbered from 1 to 200, dated January 1, 1946, payable, both as to principal and interest, in lawful money of the United States at the office of the Mercantile-Commerce Bank in the City of St. Louis, and bear interest at the rate of 1¼% per annum, payable semi-annually on surrender of the interest coupons. Twenty of the bonds mature annually on January 1 from 1948 to 1957, and the right is reserved to call in and redeem certain of them prior to maturity, at par and accrued interest,

[1]This and all other references are to R. S. '39, and to the same section numbers in Mo. R. S. A., unless otherwise expressly noted.

plus a premium of 1/8th of 1% for each year of the unexpired term of those so called for redemption. Said ordinance further provides, and the bonds on their face recite, that they are to be paid ''solely from the revenues to be derived from the City from the operation of the water and electric light works owned exclusively by said City,'' and that they ''do not constitute an indebtedness of said City within the meaning of any constitutional or statutory limitation or provision, and the taxing power of said City is not pledged to the payment hereof, either as to principal or interest.'' The bonds contain certain other provisions specified by the ordinance which are challenged by the return. They will not be set forth as the respondent does not brief his grounds of attack on them, and we will treat such grounds as abandoned, except the one briefed, i. e., clause (d) of section 5 of the ordinance.[2]

Turning first to the point which involves a question of constitutional interpretation, and on which respondent has, in part, denied registration, it is his contention that that portion of Sec. 27, Art. VI, Constitution of Missouri, 1945, relied on by relator as authorizing the issuance and sale of municipal bonds, for the purposes herein involved, is the statement or laying down of a general principle or policy, and is, therefore, not self-executing, and legislation is necessary to make the same effective, and this notwithstanding restrictions and prohibitions of such section may be self-enforcing. We will treat in this connection the further contention that the special election at which the bonds were voted is void ''because conducted in direct conflict with the provisions of Sec. 27, Art. VI'' Constitution of Missouri, 1945, and because the statutes under which said special election was held are in no wise applicable to the issuance of revenue bonds, and for the further reason said election was a mere ''volunteer'' election.

We are of the opinion that the mooted constitutional provision, the text of which is set forth in the margin,[3] is not subject to the foregoing construction. ''One of the recognized rules is that a constitutional provision is not self-executing when it merely lays down general principles, but that it is self-executing if it supplies a

---

[2] ''That so long as any of said bonds or interest coupons shall remain outstanding and unpaid, the City of Fulton shall not issue any additional bonds payable from the revenues of said works unless such additional bonds be made junior and subordinate in all respects to the bonds authorized to be issued by this ordinance.''

[3] ''Any city or incorporated town or village in this state, by vote of four-sevenths of the qualified electors thereof voting thereon, may issue and sell its negotiable interest bearing revenue bonds for the purpose of paying all or part of the cost of purchasing, constructing, extending or improving any revenue producing water, gas or electric light works, heating or power plants, or airports, to be owned exclusively by the municipality, the cost of operation and maintenance and the principal and interest of the bonds to be payable solely from the revenues derived by the municipality from the operation of such utility.'' [Sec. 27, Art. VI, Const. of Mo. 1945.]

sufficient rule by means of which the right which it grants may be enjoyed and protected, or the duty which it imposes may be enforced, without the aid of a legislative enactment. . . . Another way of stating this general, governing principle is that a constitutional provision is self-executing if there is nothing to be done by the legislature to put it in operation. In other words, it must be regarded as self-executing if the nature and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they can be determined by an examination and construction of its terms, and there is no language indicating that the subject is referred to the legislature for action.'' 11 Am. Jur., Constitutional Law Sec. 74, pp. 691-692. See, also, 16 C. J. S., Constitutional Law Sec. 48, pp. 98-101. If the constitutional provision had said that cities "may be" authorized to issue and sell, etc., we would have no hesitancy in saying that such language is addressed to the legislature, and not to the courts; but it does not so provide. On the contrary its very terms are that any city, upon a prescribed vote, "*may* issue and sell," etc. We think the language so plain, and its intent so evident that it must be held to directly confer upon the city the authority to issue and sell such revenue bonds as are here under scrutiny "by vote of four-sevenths of the qualified electors thereof voting thereon." It is true that there is no statute expressly providing the manner of conducting an election to determine whether or not a municipality shall issue such revenue bonds, so the question is reduced to whether this circumstance is an insurmountable barrier. It will be recalled that it is conceded that said proposition was approved by a vote of more than four-sevenths of the electors voting at the special election, which election complied in every way with the general statutes in relation to elections to authorize the contracting of debts in excess of a municipality's annual income and revenue (Secs. 7368-72). We have reached the conclusion that, in view of our holdings under closely analogous situations, the utilization of the general statutes just referred to was authorized and efficacious.

State ex rel. Clark Co. v. Hackmann, 280 Mo. 686, 218 S. W. 318, is directly in point. There a constitutional provision was held to be self-executing which granted power to counties to create debts for county public purposes by elections (by a prescribed majority) held for the purpose, but no machinery was provided for such election. A special election was called upon a petition signed by more than 300 voters and taxpayers at which the proposition to issue the bonds was submitted, and approved by the requisite majority. After that election, and before the case was determined on appeal, the Legislature passed an act specifically providing a method of holding such elections. And this court held it sufficient if there is used the ordinary and usual machinery provided for obtaining the expression of the voters upon the question. The following from State ex rel.

Miller v. M. K. & T. Ry. Co., 164 Mo. l. c. 213, 64 S. W. l. c. 188, was cited approvingly: "The power being conferred to hold an election, and no means provided therefor, carries with it, as an inevitable and indubitable incident, the usual and customary means to put into effect the power thus conferred." The court further held that despite the later enacted specific act, there was authority for the election. The Clark County case was followed in the later case of State ex rel. Gilpin v. Smith, 339 Mo. 194, 96 S. W. 2d 40.

The statutes under which the special election was held do contain numerous provisions that are inapplicable to revenue bonds authorized by the new constitution; such, for example, as the limitation of 5% of the assessed valuation, the provision for an annual tax, the form of ballot, and perhaps others. The ballot used at the special election contained the text of the proposition, as hereinabove quoted, followed by boxes or squares, opposite one of which was the word "Yes", and opposite the other the word "No." The directions to the voters reads as follows: "To cast a ballot in favor of the proposition place a cross (X) mark in the square opposite the word 'Yes'. To vote against the proposition place a cross (X) mark in the square opposite the word 'No.'" No exception is taken to the form or due publication of the notice, nor to any step in connection with the holding of the election, if the procedure prescribed by the sections mentioned is applicable. All of the safeguards attending an election for incurring a debt and issuing bonds to be retired through the taxing power of the city were preserved by the method actually employed, which we think, under the circumstances, was appropriate as being "the ordinary and usual machinery provided for obtaining the expression of the voters on the proposition," and thus within the holding of the Clark County and Gilpin cases, supra. On the authority of those cases, and for the reasons hereinabove pointed out, we must disallow the contention that legislation is imperative to give effect to the constitutional provision in question.

The issue made by the pleadings with respect to the validity of clause (d) of section 5 of the ordinance (see footnote 2) is that it "illegally attempts to control the discretion of the city authorities in the future exercise of their official duties, illegally surrenders essential powers vested by the Constitution or laws of the State of Missouri in the relator City, and is void." No authorities are cited in support of this proposition. Just as there is no statute providing the machinery to test the sense of the voters on the question of the issuance of revenue bonds, neither is there any statute expressly applicable to the issuance and sale of such bonds when authorized by the voters. These are subjects which undoubtedly may be dealt with by the legislature. "Minor details may be left for the legislature without impairing the self-executing nature of constitutional provisions." 11 Am. Jur. Constitutional Law Sec. 73, p. 691. But, as

pointed out in Cooley's Constitutional Limitations, 7th Ed., 122: "Perhaps even in such cases [certain self-executing provisions] legislation may be desirable . . . ; but all such legislation must be subordinate to the constitutional provision, and in furtherance of its purposes, and must not in any particular attempt to narrow or embarrass it." The constitutional grant to issue and sell revenue bonds carries with it by implication such other necessary powers as are needed to carry the granted authority into effect. The constitution being silent on the subject of the provisions to be recited in such bonds, and there being no statutory limitation applicable to the challenged provision, we think the city had the implied authority to prescribe, as one of the inducements to prospective holders, and thus favorably affect the value and marketability of the bonds, that any subsequent issue of like bonds should be junior and subordinate to the issue in question.

██ The remaining question is whether the bonds in question are eligible to registration by the state auditor under the provisions of Article 6, Chapter 16, R. S. '39, consisting of Secs. 3301-3307, both inclusive. The respondent contends that these statutes relate exclusively to, and govern the registration of bonds payable through taxation, and are inapplicable to revenue bonds. Sec. 3306 provides for the registration by the state auditor of "any bond, hereafter issued by any . . . city . . . *for any purpose whatever"* before the same "shall obtain validity or be negotiated." Among other things, the manner of registration, the authentication (by certificate) and the effect thereof are prescribed. Standing alone, the sweeping terms of this section would seem to include revenue bonds as well as bonds payable through taxation. But does this result follow when, in applying a cardinal rule of construction, other sections of the statute in relation to registration are construed with it? Turning to Sec. 3303 we find it provides, in part, as follows: "The state auditor shall, annually, on or about the first day of July, certify to the several . . . city councils . . . the amount required during the next fiscal year to pay maturing interest coupons . . . which amount shall thereupon *be levied as a special tax* upon all property in such . . . city . . . having issued such outstanding registered bonds." The section further provides how such special tax shall be collected, and paid over to the city treasurer and deposited by him to the credit of his city. The next succeeding section, Sec. 3304, says "Nothing herein contained shall prevent any . . . city council . . . from *levying a larger tax* for the payment of maturing bonds, or from applying other means to such purpose. . . . "

It is perfectly clear that Secs. 3303-3304 can have no reference to revenue bonds. They relate solely to bonds payable through the collection of taxes. It is, therefore, impossible to harmonize them with

Sec. 3306, if the latter be applied to revenue bonds. They not only create irreconcilable conflict with Sec. 3306, but they are also in conflict with the constitutional mandate as to the source of payment of revenue bonds of the kind in question, to-wit, "solely from the revenues derived by the municipality from the operation of such utility." But all of said sections may be harmonized, and caused to make a consistent whole if construed as applying only to tax bonds, and this we think would effectuate the legislative intent. We are further fortified in this view upon a consideration of Sec. 3307 of said article. By it "Any and all bonds registered by the state auditor under the provisions of the laws of this state . . . whereon there is no default in payment of principal or interest" are rendered eligible as investments for the capital stock, surplus and reserve funds of certain insurance or fraternal benefit societies, and trust companies. It also authorizes the superintendent of insurance to accept such bonds as security or pledge in all cases where such security or pledge is required by law. It grants authority to the state treasurer to accept such bonds as security for the deposit of any and all state funds, and like authority to county and city treasurers with respect to all county and city funds. Finally it makes such bonds "eligible for the investment of any funds in the possession of any administrator, executor, guardian, curator, trustee and all other persons sustaining fiduciary relations," and this "without an order of court first had and obtained, and without incurring liability for loss, except in case of inexcusable neglect." The preferred position thus accorded to bonds validated through registration by the state auditor, payable in the exercise of the taxing power, the holders thereof being possessed of well understood and long defined remedies, is not to be extended, in the absence of a manifest legislative intent so to do, to another and different type of security not constituting a debt or liability within the ordinary meaning of those terms, and to the payment of which the taxing power may not be pledged, and the issuing body does not agree to pay except out of revenues, and thus made wholly dependent upon the successful operation of the utility improved with the proceeds.

We have, in three cases compelled, the auditor, by mandamus, to register revenue bonds authorized by particular statutes. [State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. 2d 367; State ex rel. City of Excelsior Springs v. Smith, 336 Mo. 1104, 82 S. W. 2d 37; and State ex rel. St. Charles Co. v. Smith, 348 Mo. 7, 152 S. W. 2d 1.] But, as relator frankly admits, in none of those cases was any question raised concerning the construction or applicability of the registration act to revenue bonds. Applicability thereof was merely assumed, and hence there was no conclusive determinatiox of the question now directly raised for the first time. We observe

that even though validation of these bonds may not be accomplished under the act in question, there appears to be an appropriate method under Sec. 3312 by pro forma decree of the circuit court.

It follows that our peremptory writ of mandamus should be, and it is, denied.

All concur, except *Gantt, J.,* absent.