Jack FLEMING, Erma Fleming, Rex Schupbach, Luther E. Hilliard, Virginia Hilliard, James Warren and D. Patsy Warren, Plaintiffs-Appellants,

v.

The CITY OF NIXA, Missouri, a Municipal Corporation, Defendant-Respondent.

No. 51250.

Supreme Court of Missouri, Division No. 2.

Dec. 13, 1965.

---

John B. Newberry, Springfield, for appellants.

Sam Appleby, Ozark, Donald E. Bonacker, Skelton & Bonacker, Springfield, for respondent.

BARRETT, Commissioner.

■ This is a case by taxpayers and voters, said to be representative of a class, seeking to enjoin the City of Nixa from issuing revenue bonds in the sum of $265,000 for the purchase or construction of a municipally owned electrical distribution system. By reason of the amount involved jurisdiction of the appeal is appropriately in this court. Missouri Power & Light Co. v. City of Bucklin, 349 Mo. 789, 163 S.W.2d 561.

■ Essentially the appellants' claim is that the election authorizing, by a four-sevenths vote, the issuance of the bonds was illegal, "a nullity and void," and therefore of course that the city had no authority to issue the bonds. The appellants necessarily admit, and the admission is all but determinative of the appeal, that the constitutional provision thus authorizing the issuance of revenue bonds for the construction, purchase or improvement of municipally owned "electric light works" (Const.Mo. Art. 6, § 27, V.A.M.S.) is self-enforcing. State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S.W.2d 302. Nevertheless, they contend, since there are no specific statutes concerning the "method or means" by which cities of the fourth class may conduct "revenue bond elections" that such elections are governed by the statutes relating to the election of officers in cities of the fourth class, particularly RSMo 1959, § 79.030, V.A.M.S., which concludes in part, "The manner of making returns of such elections shall be prescribed by ordinance * * *." There is no general ordinance in the City of Nixa concerning, in the language of the appellants, "the means or methods by which the voters in a revenue bond issue shall be canvassed" and therefore it is said that the quoted language of § 79.030 has been violated, that the election was illegal and the bonds invalid. In summary, the appellants contend, there being no general or permanent city ordinances regarding revenue bonds and elections, the statute relating to the election of officers in cities of the fourth class, 79.030, "requires that the procedure for canvassing such an election be established by ordinance" and absent the permanent ordinance the procedure followed here rendered the election a nullity.

The election procedure followed here in submitting to the voters of Nixa the issue of the revenue bonds for a municipally owned electric light plant was substantially identical to the procedure adopted and followed in State ex rel. City of Fulton v. Smith, supra, and, as indicated, that case alone may be sufficient to dispose of this

appeal. But the appeal need not be made to turn alone on that determination, the revenue bond election procedure here was almost identical with that followed in several other cases, cases involving revenue bonds and municipal light plants, and it is not necessary to accurately detail every step involved in the submission of the issue. In brief these were the admitted or indisputable facts of the election authorizing by the required vote the issuance of the $265,000 revenue bonds by the City of Nixa. On August 5, 1964, there was a formal notice by the mayor to the Board of Aldermen calling a special meeting for "considering and acting" on the passage of an ordinance "calling a special bond election." On the same day all four members of the board signed a "consent to meeting." Also on August 5th there was a meeting of the board and one alderman "presented Bill No. 137" for an ordinance calling a special election for submitting to the voters of Nixa a $265,-000 revenue bond issue for the purchase or construction of a municipally owned "electric light works." The bill called for an ordinance "designating the time of holding said election, fixing the polling places of said election, appointing the judges and clerks to conduct said election, prescribing the form of ballot to be used" and directing the city clerk to give notice of the election. Finally following the usual procedure of motions and readings the bill was passed by a unanimous vote. The mayor declared the bill adopted as Ordinance No. 137, the formal notice of election was approved and ordered published. It is not necessary to set out in full the terms of the ordinance, the election submitting the $265,000 revenue bond issue was called for August 28, 1964, the notice published for three consecutive weeks in the *Nixa Enterprise,* the form of ballot was set forth in full with instructions to voters, two voting places, for Ward One and Ward Two, were designated and two judges and clerks for each ward were appointed. The city clerk was directed to prepare the ballots and to procure poll books and tally sheets which he was to deliver to the judges of the election. On Au-

gust 31, 1964, there was another special meeting of the board to canvass the results of the election, the clerk presented the returns from each ward, together with the certificates of the judges and clerks and the totals from the two wards were 365 votes for the bonds, 244 votes against the bonds and 6 void ballots, whereupon it was declared that the bonds were duly authorized. Thereupon Ordinance No. 138 declaring the result of the election and providing for a revenue bond issue of $265,000 was duly passed.

In these circumstances it is not necessary to attempt a definitive spelling out of just what statutes may or may not govern a revenue bond election in cities of the fourth class (see however Montague v. Whitney, Mo.App., 298 S.W.2d 461) for the reason that upon this record there was substantial compliance with § 79.030 relating to the election of officers in cities of the fourth class and for that there was also compliance with Chapter 95 relating to the financial administration of all cities, including §§ 95.130 to 95.405 which relate at least in part to general obligation bonds for electric light plants in cities of the fourth class. As indicated from the recitation of facts and from the arguments of the parties there was no general, permanent ordinance relating to revenue bond elections but as the record also shows the issue was submitted to the voters of Nixa by ordinances spelling out the details of the election procedure. And that procedure was adapted from if not copied from the following cases approving, against numerous objections, the elections and bond issues there involved, some of them for revenue bonds for municipally owned light plants. State ex rel. City of Fulton v. Smith, supra; State ex rel. City of Memphis v. Hackman (1917), 273 Mo. 670, 202 S.W. 7; Bauch v. City of Cabool, 165 Mo.App. 486, 148 S.W. 1003; State ex rel. Town of Canton v. Allen, 178 Mo. 555, 77 S.W. 868. A case cited by the appellants is almost squarely in point, Arkansas-Missouri Power Corp. v. City of Potosi, 355 Mo. 356, 196 S.W.2d 152. Al-

most identical claims were made in that case and the court concluded, "The issues presented strike at irregularities occurring in the conduct of that election; an election authorized by law and not, as plaintiffs contend, at an election unauthorized by law or vitiated by a failure to observe some mandatory prerequisite giving a court of equity jurisdiction."

◼ The appellants' other assignment of error has to do with absentee ballots, the statutes relating to suffrage and elections in general contain this provision: "The official charged by law with printing and supplying ballots under the general election laws of this state, shall, at least thirty days before any election at which absentee ballots may be cast, cause to be printed and supplied a sufficient number of ballots to be designated as 'official absentee ballots' to be furnished such absentee voters." V.A. M.S. Supp. § 112.030. The appellants "concede that this chapter has been construed as directory and not mandatory," nevertheless, since the first notice was published August 6, 1964, and the election was August 28, 1964, and because absentee ballots were not in fact available until seven days before the election, it is said that the election "is void and a nullity." To avoid the force of their admission that the statute is directory, the appellants take the position "that it is a question of law as to whether the Defendant City had substantially complied with the chapter on absentee ballots."

There was testimony upon this subject, the city clerk who had charge of the printing of these ballots said, as to the reason they were not available, "I don't know the reason. We didn't get them back from the printer, but I don't know why we didn't." She said that a few people inquired about absentee ballots, just a "general inquiry," but she did not remember any specific persons inquiring. However, "all written requests" for ballots were filed, except for one lady and she died before the election, and she knew of no person denied the right to vote by reason of the unavailability of ab-

sentee ballots. No individual voter claimed to have been denied the right to vote, the only person testifying against the city was a lady worker "against the proposition that was to be voted on." But even she knew of no one deprived of the right to vote due to the unavailability of absentee ballots 30 day before the election. Another worker against the bond issue knew of one person turned down for an absentee ballot, but she lived in another ward and had not lived in Nixa either "thirty days or ten days." Another voter testified that "one lady that told me they'd been there 28 days, but they couldn't—and I told them that they couldn't vote because they had to be there 30."

And then finally, upon this record, a case cited by the appellants is conclusive of the claims now advanced against the absentee ballots, State ex rel. School Dist. of City of Jefferson, Cole County v. Holman, Mo., 349 S.W.2d 945. There the court said, in part, "It is urged that the ballots cannot be furnished 30 days before an election which requires only 15 days' notice. We rule that such failure on the part of officials to comply with the requirement of the statute to furnish absentee ballots 30 days before an election does not void an election. This requirement is directory and not mandatory. * * * Certainly, no one could successfully contend that an election otherwise regular could be set aside merely because an official failed to furnish absentee ballots 30 days before an election." And then, after considering the subject at some length, the court observed: "No contention is made in the case before us that anyone entitled to vote by absentee ballot was not given an opportunity to do so."

At the conclusion of this case the trial court had this to say: "I think that the election was fairly held and the bonds were fairly voted, and I don't believe that, in my opinion, the plaintiff has made a case to set aside the election * * *. The result was obtained, and the majority of the voters expressed their preference and I think that

setting it aside would require more proof than we have in this case." And in this connection see State ex rel. City of Memphis v. Hackman, 273 Mo. l. c. 696, 202 S.W. l. c. 14.

For the reasons indicated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.