RICHARDSON, *Appellant*, v. McREYNOLDS *et al.*

### Division Two, March 14, 1893.

1. **Schoolhouse Site, Election to Change:** MAJORITY OF VOTERS: STATUTE. Revised Statutes, 1889, sec. 7979, which empowers a majority of the voters of a school district at the annual meeting, to remove the schoolhouse site nearer the center of the district, means a majority vote of the qualified voters present and voting at such meeting, and not a majority of all the qualified voters in the district.

2. **Practice:** WAIVER: SCHOOL ELECTION: BALLOT. The objection cannot be made for the first time in the supreme court that a school district election for the purpose of buying a school site, erecting and furnishing a schoolhouse was not conducted by ballot under Revised Statutes, 1889, sec. 7981.

3. **School Board:** BORROWING MONEY FOR NEW SCHOOLHOUSE: PETITION FOR ELECTION. No petition of the voters of the district is necessary to authorize the school board to call under Revised Statutes, 1889, section 7981 a meeting for the purpose of borrowing money and issuing bonds therefor to erect and furnish a schoolhouse.

4. **Schoolhouse Site:** STATUTE. The authority to purchase a school site is conferred only by the taxation provisions of section 7979, Revised Statutes, 1889, and no authority exists to borrow money and issue bonds for such purpose.

5. ———: ———: INJUNCTION. Injunction will lie at the suit of one of the school directors to restrain the unlawful issue of such bonds.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED.

*Leslie Orear* and *L. W. Corder* for appellant.

(1) A school district in this state is a creation of the statutes, with its powers explicitly defined by the statutes under certain constitutional restrictions. It

follows, therefore, that its powers are limited by law to those which are expressly conferred by the statute; and the manner of putting in operation its statutory powers is confined strictly to the mode pointed out in the statutes. *Buchanan v. School District*, 25 Mo. App. 85. (2) The law requires a school district by its board of directors and the members of the annual meeting to keep a record, and therefore the acts of the board can only be shown by the record which the law requires to be kept. Parol evidence is incompetent to enlarge, vary or contradict the record so made. Revised Statutes, 1889, secs. 7979 and 7990. (3) There was no valid vote taken at the annual meeting in school district 1, 51, 23, to change the location of the schoolhouse site; such change can only be made legally, when the proposed change is submitted to the resident taxpayers of said district and a majority shall vote therefor; a quorum or majority of the resident taxpayers of such district must be present at such annual meeting before the proposition to change site can be submitted. Revised Statutes, 1889, sec. 7979, subdiv. 11. (4) There was no authority in the board of directors to call a special school meeting for May 9, 1891, to vote a loan of $1,200 to buy a site, erect a schoolhouse and furnish the same in the absence of a petition signed by a majority of the qualified voters of said district. Revised Statutes, 1889, secs. 7979, 8008. (5) The election held in said school district on May 9, 1891, to vote a loan of $1,200 to buy a site, erect a schoolhouse and furnish the same, was void, and does not authorize the board of directors of such district to negotiate said loan or issue the bonds of the district therefor. Revised Statutes, 1889, secs. 7979, 7981, 8001; *Bank v. Terrell*, 78 Tex. 450; *Seeger v. Mueller*, 132 Ill. 86. (6) The board of directors of said district had no authority to negotiate the loan of $1,200, because no provision

had theretofore been made, or was then proposed to be made, providing for the payment of the annual interest thereon, and for the payment of the principal within twenty years. Constitution of Missouri, sec. 12, art. 10; *Water Co. v. Salem*, 5 Ore. 29; *Bank v. Terrell*, 78 Tex. 450; s. c., 14 S. W. Rep. 1003; *Lake Co. v. Graham*, 130 U. S. 674.

*Boyd, Murrell* and *D. D. Duggins* for respondents.

(1) The proposition to change the location of the schoolhouse site to a point nearer the center of the district was properly submitted to the voters thereof at the annual meeting, after regular notice had been given, and was properly voted on, there being fifty-two votes for and twenty-five against the proposition. A majority vote only is required to remove a site nearer the center of the district. Revised Statutes, 1889, eleventh clause, sec. 7979. (2) The proposition for the new site was submitted regularly. The description and plat of the land were submitted, voted upon, carried and announced. Witnesses Edwards, Vaughan and Basking testified to the above effect; this can be shown by parol. Dillon on Municipal Corporations [3 Ed.] secs. 300, 301. (3) The voters, when assembled at the annual meeting, organized the meeting by electing a chairman and secretary. The chairman must preside, and if any votes are challenged it is the duty of the chairman to decide upon the legality of the votes. He thus acts judicially. Sec. 7979, subdiv. 1; *State v. Mahaey*, 19 Mo. App. 210. (4) The qualified voters, when assembled, have the power to change the location of the schoolhouse site. Revised Statutes, 1889, eleventh clause, sec. 7979. However mistaken the action of the corporate body may be, courts cannot control it in the exercise of the discretionary powers.

*Buchanan v. School Dist.*, 25 Mo. App. 89; *Vitt v. Owen,* 42 Mo. 512. (5) Under the provisions of section 7981 the board of directors can borrow money and issue bonds for the payment thereof for the purpose of erecting schoolhouses and furnishing the same. (6) Section 7981, Revised Statutes, 1889, is independent of all other sections of the statutes on the method of contracting and voting a loan. It is self-enforcing, and since the revision of 1889 enlarges the scope, powers and duties of the directors to a degree far greater than they possessed before this enactment.

BURGESS, J.—This is a suit by one of the directors of school district 1, township 51, range 23, Saline county, Missouri, against the other directors and the clerk of the county court of said county, to restrain and enjoin the directors from issuing the bonds of the district in the sum of $1,200 to build a schoolhouse, furnishing it, buying a schoolhouse site, and to enjoin the said clerk from extending the tax levy upon the assessed valuation of the property in said district, for the purpose of collecting a tax to purchase a site.

The material portion of the petition is as follows, to-wit:

"Plaintiff says that said meeting was illegal and held without any warrant of law, for the following reasons, to-wit: That the petition therefor was not signed by a majority of the resident and qualified voters of said school district, as required by law; and because it had not been theretofore determined by a majority vote of the resident taxpayers, or by any vote of the resident taxpayers of said district to remove the site of the schoolhouse in said district, and because it had not been determined by ballot at the annual meeting of said district the rate to be levied upon the $100 of assessed valuation necessary to purchase a site

and erect a schoolhouse thereon and furnish the same, as provided for in section 8006 of the Revised Statutes of Missouri, and because no provision had heretofore been made, or was proposed to be made, by said meeting, providing for the collection of an annual tax sufficient to pay the interest on such proposed indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the same, and because the vote in favor of a loan of $1,200, to buy a schoolhouse site, build a schoolhouse, and to furnish the same were without authority of law, and null and void."

The defendants filed their joint answer to said petition, wherein they admitted that the defendants, McReynolds and Willard, were directors of the school district described in the petition and were so acting at all times stated therein; that the defendant McMahan was the clerk of the county court for said county of Saline; that a petition signed by fifty-one of the qualified voters of said district was presented to said board of directors as stated in the petition; that said board of directors ordered notice of said election to be given, and admitted that a meeting of the voters of said district was had at the time stated in the petition, but said answer denied that said petition was not signed by a majority of the qualified voters of said district and denied all the other allegations of the petition.

The facts are about as follows: At an annual meeting of the voters of the school district in April, 1891, the proposition to change the schoolhouse site in said district from its present location to another nearer the center of the district was voted on by all the assembled voters of the district, and also the proposition authorizing the directors of said district to negotiate a loan of $1,200 for the period of three years,

for the purpose of purchasing a site and erecting a schoolhouse thereon and furnishing the same.

Due notice had been given of said propositions by the district clerk, and that said propositions among others would be submitted to the voters for their decision at such annual meeting. At that time, there was already a schoolhouse site owned by said district upon which there was then a school building.

At the said annual meeting the above propositions were voted on and the proposition to change the schoolhouse site was submitted to all the voters of the district, and upon the vote thus taken a majority voted in favor of changing the site. Upon the proposition to "vote a loan of $1,200, to buy a site, erect a schoolhouse and furnish the same," a majority of two thirds of the legal voters of said district voting at said election, failed to vote for the same, and the proposition failed. At this meeting all the voting was done by ballot. There was no proposition submitted at this meeting to increase the annual rate ef taxation of said district for any purpose. It was not proposed that the said district should have its annual rate of forty cents on the $100 valuation increased—and said district is one not having an incorporated city or town in it, and has a property valuation of all the taxable property of only $107,145.

After said annual meeting was held in the year 1891, a petition was presented to the school directors for said district, signed by fifty-one of the qualified voters of said district, asking said directors to call a "special meeting" of the voters of said district to vote on the following propositions, viz.: *First.* To vote a loan of $1,200 to buy a site, erect a schoolhouse and furnish the same. *Second.* To vote said loan to run for three years.

At that time there were one hundred and eight legal voters in the district. Pursuant to said petition the directors ordered the district clerk to give notice of a special school meeting to be held at the schoolhouse in said district on May 9, 1891, to vote on the two propositions contained in the petition; that such notice was given for fifteen days, and that at said special meeting the propositions were submitted to the legal voters of said district; that said propositions received two thirds of the votes cast at said meeting; that the proposition, "To vote a loan of $1,200 to buy a site, erect a schoolhouse and furnish the same," was not voted on by ballot having written or printed thereon, "For the loan," "Against the loan" as the electors may have voted, but that at said meeting on May ninth, it was moved and carried that the votes be recorded, which was done.

It also appeared from the evidence that the plaintiff was at the time of said election and the bringing of this suit a resident taxpayer of said district, and the majority of the school directors of said district had ordered the clerk of the county court, who is a defendant in this suit to extend a levy of fifty cents on the $100 valuation of taxable property in said district for the purpose of meeting the annual interest on said loan and creating a sinking fund, and that the clerk was about to do so until he was restrained by the temporary restraining order.

The cause was tried by the circuit court, upon answer and motion to dissolve the injunction, and judgment rendered for the defendants, dismissing the bill and dissolving the temporary injunction, and plaintiff prosecutes his appeal.

Plaintiff's first contention is, that as the law requires a school district and the members of the school board to keep a record of its proceedings, and

that as its record does not show that at the annual meeting held on the first Tuesday in April, 1891, being the seventh day of the month, when the proposition to change the location of the schoolhouse site to the center of the district was voted on, that a majority of the resident taxpayers of said district were present and voting therefor, that the proceedings of the board are void and of no effect in law. Under the laws of this state all school districts are quasi-corporations, with power to sue and be sued, with all of their powers as well as the powers of their directors minutely prescribed and limited by law. "Not the directors, but the entire corporate body, is constituted the judge of the necessity or propriety of changing a school site." *Buchanan v. School District*, 25 Mo. App. 85. Section 7979, Revised Statutes, 1889, provides, that the qualified voters assembled at such annual meeting shall have power by a majority of the votes cast to change the location of a schoolhouse site, when the same, for any cause, is deemed necessary, provided that in every case a majority of the voters of said district shall be necessary to remove a site nearer to the center of the district; but in all cases to remove a site further from the center of said dirtrict it shall require two thirds of the legal voters of said school district.

The record shows that at this election there were fifty-two votes cast in favor of the new site and twenty-five against, while the evidence shows that there were one hundred and eight or nine resident voters in the district at that time. The evidence also tends to show that some few of the persons voting for the change of the site were not resident taxpayers, and were not therefore legal voters.

But if the action of the board in regard to counting votes that were illegal was subject to review in this proceeding, which we do not decide, there was nothing

like a sufficient number of them to have changed the result. When the statute says, "a majority vote of the voters who are resident taxpayers of said district, shall be necessary to remove the site nearer to the center of said district," it means a majority of the taxpayers present and voting at such election. *State ex rel. v. Mayor*, 37 Mo. 270.

At the annual election in April, 1891, the proposition to vote a loan of $1,200 to buy a site, erect a schoolhouse and furnish the same was voted down. At this meeting a petition was presented to the school directors for said district, signed by fifty-one of its qualified voters to call a special election of the voters of said district for the purpose of voting a loan to buy a site and erect and furnish a schoolhouse. In pursuance of said petition the directors ordered the district clerk to give notice of a special election to be held at the schoolhouse in said district May 9, 1891, to vote on said propositions; that such notice was given for fifteen days, and that at said special election the propositions were submitted to the legal voters of said district and received two thirds of the votes cast.

Plaintiff now contends for the first time that this vote was not by ballot as required by section 7981, Revised Statutes, 1889. This question cannot be raised here, as there is no allegation in reference to the manner of voting in the pleadings, nor was the attention of the court below called to it in the motion for a new trial.

We do not think that it was material whether the petition for this special election was signed by a majority of the taxpayers of the school district or not, or that any petition was at all necessary. Section 7981, Revised Statutes, 1889, *supra*, provides, that "For the purpose of erecting schoolhouses and furnishing the same in cities, towns and school districts, the board of

directors shall be authorized to borrow money and issue bonds for the payment thereof, in the manner herein provided. * * * Notice of said election shall be given at least fifteen days before the same shall be held, by at least five written or printed notices posted in five public places in the school district where said election shall be held, and the amount of the loan required, and for what purposes. It shall be the duty of the clerk to sign and post said notices'' etc.

This section seems to provide the mode and means by which the school directors are authorized to borrow money and issue bonds for the payment thereof, independent and without reference to any other section, is complete within itself in so far as borrowing money and issuing bonds in payment thereof is concerned, and no petition is required by its provisions, either express or implied. Section 8008, Revised Statutes, 1889, providing for the call of special school meetings, expressly provides that such meeting shall not be called by the school board until a petition shall be presented to said board signed by a majority of the qualified voters of said district. So it seems clear that no petition is required by section 7981, *supra*.

It is also contended by plaintiff that as the propositions voted on May 9, 1891, were not only to borrow money and issue bonds in payment thereof, for the purpose of building a schoolhouse, but were also for the purpose of buying a schoolhouse site, and furnishing the schoolhouse when builded, that the election was without authority of law, and therefore illegal and void. There is no provision made by statute for the purpose of purchasing a schoolhouse site, except by section 7979, *supra*, and that is by taxation as therein provided. There was no authority for the election to borrow money, and to issue the bonds of the district in payment thereof for the purpose of buying a site. Such

bonds when issued would have been void; and for this reason the judgment will be reversed with directions that the injunction be made perpetual. All of this division concur.