W. E. GLADNEY, R. D. WATERS, C. L. BUSHMAN, MONTGOMERY REID, R. L. MAYES, ED MAYES, CALLIE MAYES, D. C. WILKINSON, J. C. WELLS and JOHN R. PALMER, Appellants, v. JOHN M. GIBSON, J. R. PALMER, M. W. HENRY, ROSCOE CANNON, JOSEPH K. PALMER, FLOYD GALLOWAY and SCHOOL DISTRICT OF ELSBERRY, MISSOURI, a corporation, Respondents.

St. Louis Court of Appeals.  Opinion Filed July 11, 1921.

1. **SCHOOLS AND SCHOOL DISTRICTS: Cities and Towns: Select-, ing Schoolhouse Site: Changing Location of Site Established: Powers of Board of Education.** In an action seeking to enjoin a certain school district and directors of the school district from selecting a schoolhouse site in the district and from changing the location of a school site theretofore established in said district, sections 11143, 11210, 11236, 11238, 11241 and 11314 of Revised Statutes 1919, are reviewed together with other sections relating to school districts, etc., and *held* that when section 11143, which contains a provision that "the board of education in city, town or consolidated school district shall locate, direct and

authorize the purchase of sites for schoolhouses," is considered with section 11241 providing that "the board may also establish schools of a higher grade," and with section 11238, vesting the government and control of town and city districts in a board of education, and such authority is not by any other statute, applicable to a district of the character in question, vested in the qualified voters of the district, authority under section 11241 was conferred upon the board to select and acquire or change high school sites as well as sites for schools of lower grades; that the authority "to establish schools of higher grade" carried with it the authority to select a site and provide a home for the school.

2. ———: ———: ———: ———: ———. Further even though the district in question had a population of less than 5000, the board of education of the district was acting within its authority in selecting a new site for the proposed high school in said district or in changing the site previously selected and the matter was not one to be submitted to a vote of the qualified voters who were resident taxpayers of the district.

Appeal from the Circuit Court of Lincoln County.—*Hon. E. B. Woolfolk*, Judge.

Affirmed.

*John L. Burns* and *Abbott, Fauntleroy, Cullen & Edwards* for appellants.

(1) The last previous ruling of the Supreme Court denies to school boards in districts having a population of less than five thousand, the power to purchase a schoolhouse site, or to change the location of a schoolhouse site, in the absence of a vote by the people, and such ruling is controlling authority in this court. Kemper v. Long, 212 S. W. 632; Constitution of Missouri, article 6, section 6. (2) The general school laws of the State do not give to members of the School Board power to purchase a schoolhouse site or to change the location of a schoolhouse site, but that power is lodged with the resident taxpayers or the qualified voters. R. S. 1919, sec. 11210; Richards v. Halliburton, 114 Mo., 648; Buchanan v. School District, 25 Mo. App. 85; Black v. Cornell,

30 Mo. App. 641. (3) City, town or village school districts are governed by the general school law of the State in all cases where the act creating town schools does not make a contrary provision. R. S. 1919, Secs. 11236, 11238, 11240, 11243, 11251. (4) The act relating to town schools must be construed in harmony with and as part of the general school laws of the State. State ex rel. v. Schuster, 227 S. W. 60; State ex rel. v. Gordon, 261 Mo. 646, 647, 648, 649; Humphries v. Davis, 100 Ind. 284. (5) The statute does not confer upon the boards of town school districts power to purchase a schoolhouse site or to change the location of a schoolhouse site. The only power conferred is upon boards of a district having a population exceeding five thousand, etc., and boards of such districts are given power "to locate and direct and authorize the purchase of sites of schoolhouses," but no power is conferred even on such boards to "change the location of a schoolhouse site." R. S. 1919, sec. 11314; R. S. 1909, sec. 10888; Laws of Mo. 1887, p. 269; R. S. 1889, sec. 8099; R. S. 1899 sec. 9878; Laws of Missouri 1909, sec. 134. (6) The statute (Sec. 11241) empowering boards of education in town districts to "establish" schools grants to such boards no power to purchase schoolhouse sites or to change the location of a schoolhouse site. Such is the latest holding of the Supreme Court. Kemper case (Supreme Court), 212 S. W. 871; Kemper v. Long, 203 S. W. 632; Buchanan v. Hannibal School District, 25 Mo. App. 82. (7) (a) An appeal lies from the order and judgment of the court dissolving the temporary injunction and assessing the costs against the defendant, and so the courts have uniformly held in recent cases. Commission Co. v. Spencer, 236 Mo. 638; Albers v. Spencer, 205 Mo. 105. (b) When, as in this case, the injunction is the life of the bill, a ruling thereon in response to a motion to dissolve ends the litigation. Albers v. Spencer, 245 Mo. 368; Commission Co. v. Milliken, 183 Mo. App. 662; Baumhoff v. Grueninger, 202 Mo. App. 336.

*Joseph R. Palmer, Avery & Killam* and *Sutton & Huston,* for respondents.

(1) The statute vests in the qualified voters of country districts and in the boards of education of city, town and consolidated districts full and complete discretion as to the location of schoolhouse sites. State ex rel. v. Jones, 155 Mo. 576; Martin v. Bennett, 139 Mo. App. 245; Young v. Consolidated School District No. 3, 196 Mo. App. 419; Kemper v. Long, 203 S. W. 419; Kemper v. Long, 212 S. W. 872; Secs. 11143, 11238, 11241, R. S. 1919. (2) The authority to establish schools of higher grade authorized by section 11241, R. S. 1919, carries with it the authority to provide a home for the school by the selection and purchase of a site and the erection of a building thereon. State ex rel. v. Jones, 155 Mo. 576; Marain v. Bennett, 139 Mo. App. 245; Young v. Consolidated School District No. 3, 196 Mo. App. 419; Kemper v. Long, 203 S. W. 419; Kemper v. Long, 212 S. W. 872; Secs. 11143, 11238, 11241, R. S. 1919; City v. Ledwith, 23 Am. St. Rep. 565, 581, 582. (3) The power to establish a high school undoubtedly includes the authority to change or shift its location from place to place as the convenience or necessity of the community may require. City v. Ledwith, 23 Am. St. Rep. 582, and cases there cited. (4) If the power to establish a high school implies the power to provide a home for it, as the courts of this State have decided, it must also imply the power to perpetuate such home, and the power to perpetuate the home necessarily must include the power to shift or change the site, for a moment's reflection will show how quickly conditions might arise after the selection of a site which would render the site selected absolutely unfit for the proper functioning of the high school. (5) Acquiescence by the Legislature in a construction of a statute by the executive or judiciary department is evidence that such construction is in accordance with the legislative intent. 36 Cyc. 1143, and cases

there cited. Under House Bill No. 128, enacted by the Fifty-first General Assembly of Missouri, and known as the County Unit Law, and which takes effect on June 20, 1921, the tenth and eleventh subdivisions of section 11210 relating to the powers of annual school meetings of common school districts were repealed and the contention of appellants' counsel that city, town and consolidated districts are controlled by said tenth and eleventh subdivisions in the location of schoolhouse sites by references made to said subdivisions in the law relating to city, town and consolidated schools, is necessarily under the law as it now exists, utterly untenable.

ALLEN, P. J.—This is a suit in equity whereby the plaintiffs seek to enjoin the defendants from selecting a schoolhouse site in the school district of Elsberry, Missouri, and from changing the location of a school site theretofore established in said district. Plaintiffs are assessed taxpaying citizens and owners of real and personal property in the city of Elsberry, in said school district, a town school district organized and existing under the laws of this State. The school district is made a defendant, and the personal defendants are the six directors of the district.

The petition, filed on April 20, 1921, alleges that there is located within the district of Elsberry the city of Elsberry, a city of the fourth class, and that there has been in said city and in said district a public school building; that on the —— day of ————, 1919, the school district voted bonds in the sum of $28,000, for the purpose of purchasing a school site, erecting schoolhouses and other purposes specified in section 11127, Revised Statutes 1909; that at the time of the issuance of said bonds the school district owned one school site upon which was erected a public school building used as such; that shortly after the issuance of the bonds, the school district purchased a site for another public school building, known as the W. A. Cannon tract in the city of Elsberry, which

was conveyed by W. A. Cannon to the school district for a consideration of $1600 paid for out of money of the district arising from the sale of the above mentioned bonds; and that the school district site upon which is situated the present school building of said district.

The petition then alleges that notwithstanding the above-mentioned facts, the defendants are about to abandon the site mentioned above, known as the W. A. Cannon tract, and change the site of the proposed new school building to a point about one-half mile distant therefrom, and locate a new school site, popularly known as "School Site No. 2, Cannon Heights," in a subdivision known as Cannon Heights, outside of the corporate limits of the city of Elsberry, and to thereby change the location of said school site and remove it farther from the center of said district. And it is alleged that the said action of the defendant directors is illegal and contrary to law, for the reason that no election was held for the purpose of determining whether or not the location of said schoolhouse should be changed; that no election has been held whereby a majority of the voters who are resident taxpayers of said district have voted to change the location of said school site, and that no notice of any kind was given to the voters of said district of any such proposition as the selection of a school site, or the change of the school site, to be voted on at the annual school election, or at any special election; and that the action of the defendant directors in changing such location and in selecting the schoolhouse site is wholly without authority, no vote having been taken thereon, of any kind or character, either by the resident taxpayers or the qualified voters of said district.

Alleging that the contemplated action of the defendants would cause great loss and damage to the district, and that these plaintiffs are without remedy at law, plaintiffs pray that the defendants and each of them be enjoined from selecting any schoolhouse site in said district, and from changing the location of said school-

house site now existing, and for general relief. This is followed also by a prayer for an order to show cause why a temporary injunction should not be granted.

The record does not show the issuance of an order to show cause, but recites that on April 30, 1921, ten days after the filing of the petition, the defendants, having been served with process, appeared and filed a demurrer to the petition. This demurrer was overruled and thereupon, upon the same day, the court issued a temporary injunction, upon the giving by plaintiffs of a bond in the sum of $3000.

Thereafter, on May 6, 1921, defendants filed their answer, consisting of a general denial. And on the same day filed a motion to dissolve the temporary injunction.

The motion to dissolve the temporary injunction was heard upon an agreed statement of facts, together with certain testimony of defendant Joseph R. Palmer, one of the members of the school board, which need not be noticed. By the agreed statement, the facts alleged in the petition are admitted to be true; and the agreed statement of facts recites that after the issuance of the bonds, supra, adjoining districts were annexed to the school district of Elsberry, and an additional bond issue of $20,000 was voted; that the schoolhouse, which the district intends to erect, is a high school building; that there is now in the district a school building and site which is used for both grade and high school purposes, and that after the new building is completed the present building will be used for school purposes other than high school work; that it is the plan and intention of the defendants to change the schoolhouse site described in the petition as the W. A. Cannon site to another site within the school district but outside the corporate limits of the city of Elsberry, and to erect a high school building on the site so selected; and that no building has been erected on the W. A. Cannon site.

The court sustained this motion and dissolved the temporary injunction theretofore issued. Thereupon

plaintiffs, after interposing a motion for a new trial, which was overruled, appealed to this court.

The question involved in the appeal is whether the board of education of a town school district has authority to select and acquire a schoolhouse site, for high school purposes, or to change a site, previously selected for such purpose, or whether the matter is one to be submitted to a vote of the qualified voters who are resident taxpayers of the district.

Our school laws, or statutes relating to public schools, are now to be found in chapter 102 of the Revised Statutes of 1919. Article I of that chapter, consisting of section 11123, classifies public schools of this State as follows:

"First, all districts having only three directors shall be known as common school districts; second, all districts outside of incorporated cities, towns and villages, which are governed by six directors, shall be known as consolidated school districts; third, all districts governed by six directors and in which is located any city of the fourth class, or any incorporated town or village, shall be known as town school districts, and fourth, all districts, in which is located any city of the first, second or third class shall be known as city school districts."

Article II of said chapter contains "Laws applicable to all classes of schools." Article III contains "Laws applicable to common schools." Article IV contains "Laws applicable to city, town and consolidated districts." The remaining nineteen articles of this chapter need not be noticed, with the exception of one section contained in article VIII, to which we shall later refer. In said article IV is section 11241, providing as follows:

"When the demands of the district require more than one public school building therein, the board shall, as soon as sufficient funds have been provided therefor, establish an adequate number of primary or ward schools, corresponding in grade to those of other public school districts, and for this purpose the board shall di-

vide the school district into school wards and fix the
boundaries thereof, and the board shall select and pro-
cure a site in each newly formed ward and erect a suit-
able school building thereon and furnish the same; *and
the board may also establish schools of a higher grade,
in which studies not enumerated in section* 11360 *may be
pursued;* and whenever there is within the district any
school property that is no longer required for the use
of the district, the board is hereby authorized to adver-
tise, sell and convey the same, and the proceeds derived
therefrom shall be placed to the credit of the building
fund of such district.'' (Italic ours).

The district here in question is a town district, sub-
ject to the provisions of this section. There can be no
doubt that this section authorizes the board to establish
an adequate number of primary or ward schools, and for
this purpose to divide the school district into school
wards, and to select and procure a site in each ward
and erect a suitable school building thereon. Following
this is the provision that ''the board may also establish
schools of a higher grade.'' It is the contention of the
appellants that the words last quoted do not confer up-
on the school board in such districts the authority to se-
lect and procure a site for a high school; and that con-
sequently the matter is one governed by the ''general
school laws.'' It is argued that city, town or consolidated
school districts are governed by the ''general school
laws'' of the State in all cases where the act creating
such districts does not make a contrary provision. In
support of this it is pointed out that section 11236, of
article IV, supra, provides that a town or city school
district, when organized, shall be a body corporate and
possess the same corporate powers ''and be governed the
same as other school districts except as therein pro-
vided.'' And in this connection reference is made also to
language found in sections 11238, 11240, 11243 and 11251,
Revised Statutes 1919. And reasoning thus, appellant's
learned counsel conclude that the authority to select or

change a site for a high school building in a town dis-
trict resides in the qualified voters, or assessed, tax pay-
ing residents of the district, where it is lodged, by section
11210, of article III, supra, relating to common school
districts. That section deals with the powers of annual
meetings in common school districts, and provides, *inter
alia,* that the qualified ` voters assembled at such
meetings, "when not otherwise provided," shall have
the power (Tenth) "to determine, in districts newly
formed or wherein no schoolhouse site has yet been se-
lected, the location thereof, notice having been given in
the manner provided by law," or (Eleventh) "to change
the location of schoolhouse site when the same for any
cause is deemed necessary." The last-mentioned subdi-
vision of this section contains a proviso that "in every
case a majority of the voters who are resident taxpayers
of said district shall be necessary to remove a site near-
er the center of said district; but in all cases to remove
a site farther from the center of said district, it shall re-
quire two-thirds of the legal voters who are resident
taxpayers of such school district voting at such election."

That section relates alone to common-school dis-
tricts, and has to do with the powers of the qualified
voters of such districts "assembled at such meeting."
It manifesty has no application to a town school district
where no such annual meetings are held, but where elec-
tions, to vote upon propositions that may be lawfully.
submitted, are required to be by ballot and conducted
in the same manner as elections for State and county
officers. [See Sec. 11251, Rev. Stat. 1919.] If, as ap-
pellant contends, we must look to the "general school
laws" to determine where the authority for selecting or
changing a high school site, in districts such as this, is
vested, we regard it as clear that the provisions of sec-
tion 11210, supra, cannot be said to be general in char-
acter, applicable to districts other than common school
districts. Not only is it a section found in an article
which is expressly made applicable to common school

districts, but the very terms of the section are such as to render it inapplicable to a district such as that here involved.

Having in view appellant's argument that we must look to the "general school laws," we turn to article II of chapter 102, containing laws applicable to all classes of public schools. But one section of that article has to do with the selection or changing of school sites, viz., section 11143, which is as follows:

"Whenever any district shall select, at the annual or any special meeting, one or more sites for one or more schoolhouses, *or the board of education in city, town or consolidated school district, under the provisions of the statute applicable thereto, shall locate, direct and authorize the purchase of. sites for schoolhouses,* libraries, offices, and public parks and playgrounds, and cannot agree with the owner thereof as to the price to be paid for the same, or for any other cause cannot secure a title thereto, the board of directors or board of education aforesaid may proceed to condemn the same in the same manner as provided for condemnation of right of way in chapter 13, article II of the Revised Statutes of 1919," etc. (Italics ours).

The language of this section clearly indicates that it was the intention of the Legislature that in a common school district the authority to select a schoolhouse site be vested in the resident taxpayers of the district assembled in annual meeting, but that in a city, town or consolidated district such authority be vested in the board of education. And when this section is considered with section 11241, supra, and with section 11238, Revised Statutes 1919, vesting the government and control of town and city districts in a board of education, and it is borne in mind that the authority here in question is not by any other statute, applicable to a district of this character, vested in the qualified voters of the district, it seems quite clear that by section 11241, supra, it was intended to confer upon the board authority to select and

acquire, or change, high school sites, as well as sites for schools of lower grade; that the authority to "establish schools of higher grade" was intended to carry with it the authority to select a site and provide a home for the school. [See Martin v. Bennett, 139 Mo. App. 237, 1. c. 245, 122 S. W. 779]. The matter has been recently passed upon by the Springfield Court of Appeals in Young v. Consolidated School District No. 3, 196 Mo. App. 419, 1. c. 421, 193 S. W. 627. In the opinion, by STURGES, J., it is said:

"The plaintiffs concede, as we understand, that so far as ward or primary schools are concerned the statute gives the school board and not the voters the power and authority to 'select and procure a site' in each ward and erect buildings thereon; but plaintiffs contend that the power there given to 'establish schools of a higher grade' does not include the selection of a site for such higher school. In view of the fact that there is no provision made in the article relating to town, city and consolidated schools for the voters to select a site of the schools of a higher grade, we think this construction of section 10869, supra, is too narrow. The Supreme Court, in State ex rel. v. Jones, 155 Mo. 570, 576, 56 S. W. 307, after referring to this section, there mentioned as section 8088, Revised Statutes 1889, and the establishment of high schools thereunder, said: 'The statute vests in the qualified voters of the district of country districts and in the directors of the city districts, full and complete discretion as to the location of the schoolhouses (Secs. 7979, 8001 and 8085, R. S. 199).' The sections there referred to are now sections 10845, 10792 and 10866, Revised Statutes 1909 (Secs. 11210, 11143 and 11238, Rev. Stat. 1919). Of these sections so referred to by the Supreme Court as conferring power upon the board of directors in city, town and consolidated schools to select school sites, section 10866 is part of the article on such kind of schools and vests the government and control of same in the board of education of six members. Section 10792

208 M. A.—6

is part of the article of the same chapter applicable to all schools and provides for the condemnation of sites when selected, and no agreement is reached with the owner as to the price. It is significant that this section was amended in 1913, Acts 1913, page 713, by adding the words printed in bold-face type so as to read: 'Whenever any district shall select, at the annual or any special meeting, one or more sites for one or more schoolhouses, or the board of education in city, town or consolidated school districts, under the provisions of the statute applicable thereto, shall locate, direct and authorize the purchase of sites for schoolhouses, libraries, offices and public parks and playgrounds, and cannot agree with the owner thereof as to the price to be paid for the same, or for any other cause cannot secure the title thereto, the board of directors or board of education aforesaid may proceed to condemn the same in the same manner as provided for condemnation of right of way,' etc. This plainly implies the right of the school board, and not the voters, to select all new schoolhouse sites in city, town and consolidated districts. In Martin v. Bennett, 139 Mo. App. 237, 245, 122 S. W. 779, the court used this language with reference to locating high schools in consolidated districts: 'I think also that the authority to establish a high school carries with it the authority to provide a home for the school and to erect a building for the purpose on ground owned or to be acquired by the district.'

"The case of Buchanon v. School District, 25 Mo. App. 85, is cited as holding that in city, town or consolidated schools the same as in country schools, 'not the directors but the entire corporate body is constituted the judge of the necessity or propriety of changing the school site.' That case was written when section 7146, Revised Statutes 1879 (sec. 11241, R. S. 1919), was in force and before that section was amended so as to confer on the board of directors the power now contained in section 10869, supra, to select and procure school sites.

What is said in Richardson v. McReynolds, 114 Mo. 641, 646, 21 S. W. 901, about the power of the voters only to change a school site has reference to a country school district only.''

We are satisfied with the conclusion reached by the Springfield Court of Appeals. The opinion in the Young Case is referred to approvingly by the Kansas City Court of Appeals in Kemper v. Long, 203 S. W. 632. That case went to the Supreme Court on certification, where, in an opinion by Judge JAMES T. BLAIR, reported in 212 S. W. 871, the decision of the Kansas City Court of Appeals was sustained. Appellant refers us to certain language used by Judge BLAIR in that opinion as supporting the view that the authority conferred by said section 11241, supra, to ''establish'' schools of a grade higher than ward schools does not include the power to select and procure school sites and erect buildings for such schools. Some language of the opinion when taken alone, may seem to lend support to appellant's contention; but the court had under consideration the question of the right of the board of education to rent a building for high school purposes; and when the whole opinion is considered it will be readily seen, we think, that nothing decided in that case affects the ruling in the Young case, supra, or cases there relied upon. The gist of the decision of the Supreme Court in the Kemper case is that the power to ''establish'' a high school includes the power to rent a building for such purpose; and our ruling herein is in no wise in conflict with the decision of the Supreme Court upon the matter there in judgment.

The Elsberry School District has a population of less than five thousand. And it is contended by appellant that section 11314, found in article VIII, supra (which article contains ''laws applicable to certain school districts''), makes it clear that in town districts having a population of less than five thousand no authority is conferred upon the board to select and purchase

sites for schoolhouses. Section 11314, provides as follows:

"In all such school districts as are mentioned in article IV of this chapter that have or that may hereafter have a population exceeding five thousand and not exceeding one hundred thousand inhabitants, the board of education of such school districts shall have full power, by an affirmative vote of not less than two-thirds of all the members of such board, to locate and direct and authorize the purchase of sites for schoolhouses, libraries, school offices and public parks and playgrounds adjacent to the schoolhouse site or elsewhere in said school district, and, by a like vote, to direct and authorize the sale of any real estate," etc.

In Kemper v. Long, supra, 203 S. W. 632, the Kansas City Court of Appeals points out that the portion of that section here relied upon was in force when the decisions in State ex rel, v. Jones and Martin v. Bennett, supra, were decided. The court said: "But that part of the statute just quoted was in force when those decisions were rendered (section 8099, R. S. 1889, and section 9878, R. S. 1899), and we must assume was considered by the court."

While section 11314 vests in the boards of districts there mentioned the power to locate, direct and authorize the purchase of sites for schoolhouses, libraries, etc., nothing therein contained purports to limit the power conferred by section 11241, supra, upon boards of town districts, though having less than five thousand inhabitants. Certainly as to selecting and acquiring sites for schools other than high schools, the same power is conferred by both sections. And we think that upon a proper construction of section 11241, the same power is conferred by both sections with respect to selecting and acquiring sites for high schools. There is merely an overlapping of the statutes touching the matter, and no room appears for the application of the maxim, "*expressio unius est exclusio alterius.*"

In conclusion we may say that in view of the nature of city and town school districts, and the various statutes applicable thereto, it seems well nigh inconceivable that the Legislature intended that the question of selecting a high school site should be left to the qualified voters of such districts. As said above, elections held in such districts are required to be by ballot, and conducted as are elections for State and county officers; and the polls must be kept open from seven o'clock A. M. to six o'clock P. M. (section 11251). No provision whatsoever is made by law for submitting at such an election the question of the selection of a schoolhouse site or the changing of such a site; nor does this appear practicable. To leave the matter entirely to the judgment of the qualified voters of the district, would mean that each voter would have the right to vote for any site that he might indicate. There is no provision in the law as to how a voter shall indicate on his ballot what site he is voting for. An effort to have each voter, of his own initiative, point out or describe the site of his choice, might well lead to utter confusion. And if the board of education should designate two or more sites, between which the voters are to choose, then the voters would be precluded from exercising their independent judgment in the matter, being confined to a choice between the sites submitted by the board. And for this there is no sanction in the law. On the other hand, in common school districts, where the qualified voters assemble in annual meeting, the matter of selecting or changing a schoolhouse site may be considered in a parliamentary way and intelligently disposed of.

And in this connection it may be observed that other reasons why the provisions of the tenth and eleventh subdivisions of section 11210, supra, are not adapted to city or town districts, readily suggest themselves. But we need not pursue the matter farther. We are of the opinion that the defendant members of the board of education of the Elsberry District were acting within their authority in selecting a new site for the proposed high

Gladney et al. v. Gibson et al.

school in said school district, or in changing the site previously selected.

It follows that the judgment below should be affirmed, and it is so ordered. *Daues, J.,* concurs; *Becker, J.,* absent.