Petition of MONROE CITY, Missouri, for a Pro Forma Decree Authorizing the Issuance and Adjudicating the Validity of $50,000 Principal Amount of General Obligation Industrial Building Bonds, and $100,000 Principal Amount of Industrial Building Revenue Bonds of Said City.

MONROE CITY, Missouri (Petitioner), Respondent,

v.

Earl Richard SOUTHERN (Intervenor), Appellant.

No. 49328.

Supreme Court of Missouri,

En Banc.

Aug. 13, 1962.

John F. Spalding, Monroe City, Mo., Robert B. Fizzell, Robert B. Fizzell, Jr., Norman E. Gaar and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent, City of Monroe City, Missouri.

Earl Richard Southern, pro se.

LEEDY, Judge.

This is a statutory proceeding (Sections 108.310–108.350, RSMo 1959 and V.A.M.S.,

to which revision all statutory references are made unless otherwise noted) upon the petition of the City of Monroe City (a city of the fourth class) for a pro forma decree authorizing the issuance and declaring the validity of two proposed bond issues approved by the voters to carry out a project for industrial development of such municipality. The bonds are of two types, one issue being denominated and referred to as "$50,000 principal amount of general obligation Industrial Building Bonds" and the other as "$100,000 principal amount of Industrial Building Revenue Bonds." Earl Richard Southern, a taxpaying citizen appearing pro se, intervened and contested the validity of the bonds. Upon a hearing the trial court decreed their validity and authorized their issuance, and intervenor has appealed.

The project for which the bonds in question have been voted is characterized by the petition and accompanying exhibits as one "relating to the purchase, construction, extension and improvement of an industrial plant and the lease of the same to Kuhlman Die-casting Company" (for manufacturing and industrial development purposes). The petition bottoms the validity of the bonds and the city's right to issue them upon the authority conferred by §§ 23(a) and 27 of Article VI of the Constitution of Missouri, V.A.M.S. (as amended at the general election held November 8, 1960, by the adoption of Amendment No. 4 submitted thereat), and the provisions of the statute enacted in implementation of such constitutional amendment to-wit, House Committee Substitute for House Bills 41 and 370, Laws 1961, p. 189, now known as §§ 71.790–71.850, and hereinafter referred to as the enabling act. All proceedings for the issuance of the bonds are alleged to have been taken pursuant to such constitutional and statutory authority.

Amendment No. 4 so adopted by the people, was proposed by the 70th General Assembly (Joint House Resolution No. 11, Laws 1959, Resolutions p. 10a). It con-

tained two sections, by the first of which § 23(a)—an entirely new provision—was added to Article VI, as follows:

"By vote of two-thirds of the qualified electors thereof voting thereon, any city or incorporated town or village within any county in this state which has less than four hundred thousand inhabitants according to the last preceding federal decennial census, may become indebted for and may purchase, construct, extend or improve plants to be leased or otherwise disposed of pursuant to law to private persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings, fixtures and machinery; and the indebtedness incurred hereunder shall not be subject to the provisions of Sections 26(a), 26(b), 26(c), 26(d) and 26(e) of Article VI of this Constitution; provided, such indebtedness incurred hereunder for this purpose shall not exceed ten per cent of the value of taxable tangible property in said city, or incorporated town or village as shown by the last completed assessment for state and county purposes." § 23(a), Article VI.

Section 2 of said Amendment No. 4, while technically repealing pre-existing § 27 of the same article and inserting in lieu thereof a new section, actually worked only the addition of those words and figures which are italicized below, together with a slight change in the punctuation previously existing. As so amended, § 27 of Article VI reads as follows:

"Any city or incorporated town or village in this state, by vote of four-sevenths of the qualified electors thereof voting thereon, may issue and sell its negotiable interest bearing revenue bonds for the purpose of paying all or part of the cost of purchasing, constructing, extending or improving any *of the following:* (1) revenue producing water, gas or electric light works, heating or power plants; *(2) plants to be leased to private persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings,* *fixtures and machinery;* or *(3)* airports; to be owned exclusively by the municipality, the cost of operation and maintenance and the principal and interest of the bonds to be payable solely from the revenues derived by the municipality from the operation of *the* utility *or the lease of the plant.*"

At the session of the Legislature next following the adoption of Amendment No. 4, that body, obviously regarding these new provisions as not self-executing, passed the enabling act just mentioned.

Without undertaking a critical analysis of the enabling act (§§ 71.790–71.850), it may be said that its salient features are, in general outline, these: It authorizes any city, incorporated town or village to carry out projects for industrial development ("project for industrial development" being defined as meaning "the purchase, construction, extension and improvement of industrial plants, including the real estate, buildings, fixtures and machinery"), and requires prior approval of the plan for any such project by the governing body of the municipality, to be followed by submission of the plan to a state agency (presently the Division of Commerce and Industrial Development—§ 71.803) with certain information pertaining to the project. It then becomes the duty of the state agency to promptly examine the application and make such investigation as it deems necessary; and to approve the project when it finds such project "(1) Will further the economic development of, and employment in, the municipality and the state; (2) Will further the general welfare of the municipality and the state; and (3) Is economically feasible and will not become a burden to the taxpayers of the municipality." The state agency is required to notify the municipality of its approval or disapproval of the plan. Conditional approval is also provided for. Upon the approval of the plan by the state agency "the municipality shall consider the project, as approved. The governing body may, by ordinance or reso-

lution duly enacted, approve the project, and the municipality shall thereupon be authorized to carry out the project according to the plan" as approved by the state agency. Carrying out a project without such prior approval (state and municipal) is expressly prohibited. And no subsequent change in the plan is permissible without state and municipal approval obtained in the same manner as the original plan.

Section 71.817 authorizes "Any municipality, no part of which is located in a county of more than four hundred thousand population," to issue its general obligation bonds in an amount not in excess of ten per cent of the assessed valuation of the taxable tangible property in the municipality to provide funds for the carrying out of a project under the act. Proposals for the issuance of such bonds are required to be submitted in the manner provided by §§ 95.135–95.170, and to be approved by at least two-thirds of the voters voting on the proposition.

Section 71.820 is not restricted to those municipalities mentioned in the preceding section, but is applicable to, and authorizes "any municipality" (defined as meaning "any city, incorporated town or village of the state") to "issue revenue bonds to provide funds for the carrying out of a project under sections 71.790 to 71.850. The revenue bonds shall be paid solely from revenue received from the project, and shall not be a general obligation of the municipality."

When an approved project provides for the issuance of revenue bonds, the governing body is required to submit such proposal to the voters at a regular or special election. The act prescribes the time and manner of giving notice of the election, the form of ballot, and the vote required (four-sevenths) for the issuance of such revenue bonds. It also empowers the municipality to fix the terms and form of the revenue bonds so to be issued, and requires that a sufficient sinking fund for the payment of such revenue bonds and the interest thereon

and necessary fiscal agent charges be created and maintained.

Section 71.840 provides, "When funds have been received by the municipality for the carrying out of the project, the municipality shall purchase, construct, extend or improve the facilities as provided by the plan."

Whenever the approved plan calls for the construction, improvement or extension of facilities, the municipality is required to enter into a contract for that purpose, the same to be let on competitive bidding, after notice of the letting, etc. § 71.843.

Section 71.847 confers upon the municipality the power to lease to private persons, partnerships or corporations the facilities thus purchased, constructed or extended by it, but requires, in the event the facility has been financed by revenue bonds, that the rental shall be sufficient to meet the interest and sinking fund requirements; the lease to contain such other terms consistent with the act, as are agreed upon.

Apart from the emergency clause, the concluding provisions of the act as presently contained in § 71.850 are: "Any municipality may sell or otherwise dispose of the property, or buildings or plants acquired under sections 71.790 to 71.850 upon approval by the division of commerce and industrial development. The terms and method of the sale or other disposal shall be established by the division."

The act was passed with an emergency clause, and thereafter approved by the Governor on June 26, 1961. Substantially all of the proceedings taken by the city (allegedly in compliance with the act) in authorizing the issuance of both bond issues (approval of the project at both local and state levels, the calling and holding of the special election, canvassing the returns and declaring the result thereof, by the enactment of the requisite ordinances) were taken prior to the time such enabling act would have taken

effect in the absence of the emergency clause; that is, such proceedings were taken within ninety days after the adjournment of the session at which the enabling act was passed. This is the situation that obtained in the very recent case of State ex rel. City of Charleston v. Holman, Mo., 355 S.W.2d 946, except that only general obligation bonds of the city for a project for industrial development (and not revenue bonds) were there involved. In that case it was held that § 23(a) of Article VI of the Constitution was not self-enforcing; that as of the date of the passage of the enabling act no emergency existed within the meaning of §§ 29 and 52(a) Article III of the Constitution, thus rendering invalid and inoperative the emergency clause with which the bill was passed, and consequently the bonds were void because authorized by proceedings pursuant to the act before its legally effective date.

The Charleston case was decided by this court after the instant case was determined in the trial court and before being submitted here. The city frankly concedes that the Charleston case is applicable to the $50,000 principal amount of general obligation Industrial Building Bonds here involved, and accordingly does not seek to sustain that portion of the judgment of the trial court which declares the validity of the general obligation bonds. The city insists, however, that the Charleston decision does not apply to the $100,000 principal amount of Industrial Building Revenue Bonds for the reason that the provisions of § 27, Article VI of the Constitution, as amended, are self-executing and no enabling legislation is necessary to permit a municipality to issue revenue bonds pursuant to said section. This contention is based on the case of State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S.W.2d 302. It is true that this court there held § 27, Article VI of the Constitution, *as originally adopted in 1945,* to be self-executing, and so, in the absence of an enabling statute, sustained the validity of an issue of revenue bonds of the city for

the purpose of paying a part of the cost of extending and improving its municipally owned combined water and electric light works. Such bonds had been authorized by the constitutionally prescribed four-sevenths majority of the electors voting on the proposition at a special election, which special election complied with general statutes in relation to elections to authorize the contracting of debts in excess of a municipality's annual income and revenue. The determinative question was whether, under the facts and circumstances there in judgment, the absence of a statute expressly providing the manner of conducting an election to determine whether or not a municipality shall issue revenue bonds for one of the purposes specified in § 27 (paying a part of the cost of extending and improving its municipally owned combined water and electric light works) was an insurmountable barrier. As indicated, this question was answered in the negative, the court being of the opinion, and so holding, that the utilization of the general statutes to which reference has just been made was authorized and efficacious.

It is to be noted that § 27, at the time it was construed to be self-executing, was applicable to revenue bonds for only municipally owned public utilities and municipally owned airports. The ownership and operation of the former, at least, had long been regarded as a traditional function of municipal government. The latter (airports), by virtue of advances in air transportation and the consequent demands of changing times, had more recently succeeded to that status. Such practices, as functions of municipal government, had been so long well established and universally recognized that we do not pause to cite the numerous statutes then (and now) expressly authorizing municipalities so to do. The intent of the framers of the section might, paradoxically, have been to endow such constitutional provision with the qualities of an enabling act as to the subjects then within its scope. We say this in the

light of the debates in the Constitutional Convention on the meaning and effect of the section (as adopted by the people in 1945) wherein it was asserted that previous efforts to obtain legislation authorizing municipalities to issue revenue bonds to finance municipally owned utilities had been futile, and, in the opinion of some of the members, at least, the section was self-executing.

So much for the situation and state of the applicable law as of the time of the decision in the City of Fulton case. Since then the constitutional and statutory changes hereinabove pointed out have been made by which a wholly new concept of municipal governmental function has been introduced into the body of our law. We are unhesitatingly of the opinion that the mere expanding of § 27 by the simple device of wedging (so to speak) words embodying such new concept into or between provisions previously interpreted as being self-executing does not compel that same interpretation as to the new matter so inserted. Nor are we willing to say that it should be so interpreted, this for the reason that this innovation by way of municipal financing of industrial projects is so new and untried, its possibilities so sweeping, and its operation and potentialities so utterly uncertain (and great) as to imperatively require statutory charting of its course. This was recognized by the Legislature in passing the enabling act, and at least tacitly by the City of Monroe City in taking all steps requisite to the validity of the bonds pursuant to the enabling act, and relying thereon in the trial court; nor was it ever contended in the trial court that the provisions of § 27, as amended, were self-executing. We are of the opinion that the new provisions of said section (under Amendment No. 4) are not self-executing, and require legislation to carry them into effect, quite as much as did § 23(a), as held in the Charleston case. The proceedings taken by the city pursuant to the enabling act for authorization to issue the bonds having antedated the effective date of such act, it follows that the revenue bond aspect of the present case is also governed by the Charleston case, thus resulting in the invalidity of those bonds as well as the general obligation bonds. This being true, as said in the Charleston case, "[N]one of the other contentions herein made can properly be before the court for consideration." The judgment of the trial court must, therefore, be reversed: it is so ordered.

All of the Judges concur.