**STATE of Missouri at the relation of the CITY OF EL DORADO SPRINGS, Missouri, Relator,**

v.

**Haskell HOLMAN, State Auditor of Missouri, Respondent.**

No. 49582.

Supreme Court of Missouri,

En Banc.

Dec. 20, 1962.

W. W. Sunderwirth, City Atty., City of El Dorado Springs, Robert B. Fizzell, Rob-

ert B. Fizzell, Jr., Norman E. Gaar, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for relator.

Thomas F. Eagleton, Atty. Gen., C. B. Burns, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

LEEDY, Judge.

Original proceeding in mandamus at the relation of the City of El Dorado Springs to compel the respondent State Auditor to register and certify, under the provisions of § 108.240, RSMo 1959 and V.A.M.S.,[1] an issue of $60,000 of General Obligation Industrial Building Bonds of said city.

Acting under the authority conferred by § 23(a) of Article VI of the Constitution of Missouri, (which constituted Section 1 of Constitutional Amendment No. 4 adopted at the general election held November 8, 1960) and an act passed by the 71st General Assembly in implementation of said constitutional amendment (H.C.S.H.B. 41 and 370, Laws 1961, p. 189, now designated as §§ 71.790–71.850, RSMo 1959 and V.A.M.S., and sometimes hereinafter referred to as the enabling act), the city authorized the issuance of said bonds "for the purpose of purchasing and constructing a plant to be leased to Witt Printing Company, Incorporated, of El Dorado Springs, Missouri, for manufacturing and industrial development purposes, including real estate, buildings, fixtures and machinery." All steps requisite to the authorization and issuance of said bonds under the foregoing constitutional and statutory provisions were duly taken. It is not contended that there was any deficiency or irregularity in any of such steps, nor with respect to the form or terms of the bonds. The Auditor has refused registration on the ground that the aforesaid constitutional amendment by which § 23(a) of Article VI purportedly became part of our organic law is void, and for the further reason that the enabling act is unconstitutional.

Amendment No. 4 was proposed by the 70th General Assembly (Joint House Resolution No. 11, Laws 1959, Resolutions p. 10a). It contained two sections, by the first of which § 23(a)—an entirely new provision—was added to Article VI, as follows:

"Section 23(a) By vote of two-thirds of the qualified electors thereof voting thereon, any city or incorporated town or village within any county in this state which has less than four hundred thousand inhabitants according to the last preceding federal decennial census, may become indebted for and may purchase, construct, extend or improve plants to be leased or otherwise disposed of pursuant to law to private persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings, fixtures and machinery; and the indebtedness incurred hereunder shall not be subject to the provisions of Sections 26(a), 26(b), 26(c), 26(d) and 26(e) of Article VI of this Constitution; provided, such indebtedness incurred hereunder for this purpose shall not exceed ten per cent of the value of taxable tangible property in said city, or incorporated town or village as shown by the last completed assessment for state and county purposes."

Section 2 of said Amendment No. 4, while technically repealing pre-existing § 27 of the same article and inserting in lieu thereof a new section, actually worked only the addition of those words and figures which are italicized below, together with a slight change in the punctuation previously existing. As so amended, § 27 of Article VI reads as follows:

"Any city or incorporated town or village in this state, by vote of four-sevenths of the qualified electors thereof voting thereon, may *issue and sell its negotiable interest bearing revenue bonds* for the purpose of paying all or part of the cost of purchasing, constructing, extending or improving any *of the following:* (1) revenue producing water, gas or electric light works, heating

---

1. All statutory references are to RSMo 1959 and V.A.M.S., unless otherwise expressly noted.

or power plants; (2) *plants to be leased to private persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings, fixtures and machinery;* or (3) airports; to be owned exclusively by the municipality, the cost of operation and maintenance and the principal and interest of the bonds to be payable solely from the revenues derived by the municipality from the operation of *the* utility *or the lease of the plant."*

A summary of the salient features of the enabling act will be found in Petition of Monroe City, Mo., 359 S.W.2d 706, 707, 708–709. El Dorado Springs is a city of the fourth class in Cedar County, Missouri, which county has a population, according to the 1960 census, of less than 400,000 inhabitants. It is conceded the bonds are being issued within the ten per cent limitation specified in § 23(a), Article VI of the Constitution. The steps taken in the instant matter are set out because of the newness of some of the provisions, constitutional and statutory, under which they were required. On March 29, 1962, the Board of Aldermen adopted resolutions approving three projects for industrial development to be carried out pursuant to said § 23(a) of Article VI of the Constitution and the enabling act, among which being the one involved in the instant proceeding as hereinabove summarized; pursuant to the resolution with respect to the latter project the Mayor and City Clerk were authorized to, and they did submit the plan for said project with the required data to the appropriate state agency, the Division of Commerce and Industrial Development of the Department of Business and Administration for approval; the Division duly examined said application, held a hearing thereon, and on March 30, 1962, approved the same, and issued its certificate of approval, in which was incorporated its findings that the proposed project "will further the economic development, employment and general welfare of the City of El Dorado Springs, Missouri, and of the State, and that said project is economically feasible and will not become a burden on the tax-

payers of El Dorado Springs, Missouri, insofar as we can determine from the facts and economic conditions existing at the present time"; the Board of Aldermen on April 2, 1962, duly passed and adopted Ordinance No. 953, approving said three projects, and calling a special election for the purpose of voting thereon, among them being Proposition No. 1, to issue the $60,000 general obligation bonds which form the subject matter of the present controversy; the ordinance provided that said special election be held on May 8, 1962, and designated the polling places and clerks thereof, which ordinance was duly approved by the Mayor on April 2, 1962.

Pursuant to the provisions of said ordinance and the applicable laws of Missouri, due notice of said election was given by publication, and on May 8, 1962, said election was duly and regularly held, the proposal, including form of ballot used, having been submitted as prescribed in § 71.813 (by reference). The judges and clerks of election duly certified that said Proposition No. 1 carried by a vote of 484 to 68, and the Board of Aldermen, after having duly examined the poll books, tally sheets and other instruments relating to said election, passed Ordinance No. 956 so declaring, which ordinance was approved by the Mayor on May 8, 1962.

On May 24, 1962, the Board of Aldermen duly passed Ordinance No. 957 authorizing the issuance of the bonds in question, the same to consist of 60 bonds, numbered from 1 to 60, inclusive, each in the denomination of $1,000, said bonds to be dated May 15, 1962, and to become due serially on May 1 in the years 1963 to 1972, inclusive, all of said bonds to bear interest at the rate of four per cent (4%) per annum, payable May 1, 1963, and thereafter semiannually on November 1 and May 1 in each year. The bonds were issued accordingly and thereafter presented, as required by § 108.-240, to the State Auditor, who declined to register and certify the same for the reasons we have mentioned, and which will be hereinafter more fully developed.

Constitutional Amendment No. 4 is attacked as being void on the ground, first, that it "violates Section 2, Article XII of the Constitution by submitting two amendments as one." The essential difference in the nature and characteristics of general obligation bonds and revenue bonds, both of which are authorized by the amendment, is emphasized and relied on as showing this alleged doubleness; that is, that the issuance of general obligation bonds under § 23 (a) (which bonds constitute an indebtedness and are payable from general municipal taxes) requires that all taxpayers of the municipality contribute to the cost of the purchase, construction, extension or improvement of plants for manufacturing and industrial development purposes, whereas the issuance of revenue bonds under § 27 (which bonds are payable solely from the revenues to be derived from the operation of a municipally owned utility, or the lease of a municipally owned plant for manufacturing and industrial development purposes) does not places a burden on the taxpayers, nor·is an indebtedness of the municipality thereby incurred for such purpose. And from this premise, respondent (invoking the provision of § 2(b) of Article XII of the Constitution that " * * * More than one amendment at the same election shall be so submitted as to enable the electors to vote on each amendment separately") argues that the voters were prevented from approving an amendment authorizing the issuance of revenue bonds unless they also voted for the amendment to authorize the issuance of general obligation bonds; and finally, "These two matters have not the slightest connection with each other and certainly cannot be treated as pertinent to one subject." We disagree. Section 2(b) of Article XII of the Constitution has a further, and, we think controlling provision as applied to this amendment, to-wit, "No such proposed amendment shall contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one sub-·ject *and matters properly connected therewith.*" (Emphasis supplied.) We say this

because the subject of the amendment is the authorization of municipal financing of manufacturing and industrial development projects, by the issuance of bonds, so that "matters properly connected therewith" would reasonably include provisions authorizing the issuance of different types of bonds. Compare State ex rel. Board of Fund Commissioners v. Holman, (Mo.) 296 S.W.2d 482, and Kellams v. Compton, (Mo.) 206 S.W.2d 498, 4 A.L.R.2d 612.

What we have just said is applicable to, and rules that facet of the attack upon the constitutionality of the enabling act (§§ 71.790–71.850) based on the contention that authorization for the issuance of general obligation bonds and authorization for the issuance of revenue bonds constitute two different subjects, and the act having embraced both, it was violative of § 23, Article III, because containing more than one subject.

Respondent further contends that Amendment No. 4 is void because the following ballot title under which the proposed amendment was submitted is fatally defective:

"To authorize any municipality within any county having less than 400,000 population by a ⅔ vote to become indebted, not to exceed ten per cent of the value of the taxable property in the municipality, to acquire, construct, extend or improve plants, including real estate, buildings, fixtures and machinery, to be leased or disposed of to private interests for manufacturing and industrial purposes and to authorize any municipality by a ⁴⁄₇ vote to issue revenue bonds for such plants, to be so leased to private interests."

The respects in which respondent contends the ballot title was fatally defective (as respectively stated under his "Points Relied On") are these: (1) In that it exceeded the 25-word limitation thereon as imposed by § 125.030; (2) In that it "did not state that one new provision [§ 23(a)] was being adopted, and a change was being

made in an existing provision [§ 27, Art. VI] of the Constitution"; and (3) In that it "did not state fully the proper meaning and effect of such proposed amendment."

The statutory scheme for devising ballot titles for proposed constitutional amendments is to be found in § 125.030, the pertinent provisions of which may be thus summarized: The attorney general in the first instance is to "provide and return to the secretary of state an official ballot title for such proposed constitutional amendments. The official ballot title may be distinct from the legislative title of such proposed constitutional amendment and shall express in not exceeding twenty-five words the purpose of such proposed constitutional amendment. In making such official ballot title the attorney general shall, to the best of his ability, give a true and impartial statement of the purposes of the proposed constitutional amendment, and in such language that such official ballot title shall not be intentionally an argument likely to create prejudice either for or against such proposed constitutional amendment." The section further provides for an appeal to the circuit court (within a limited time) by any citizen who is dissatisfied with the official ballot title thus provided. The circuit court is thereupon required to "examine such proposed constitutional amendment, hear arguments, and in its decision thereon certify to the secretary of state an official ballot title * * in accord with the provisions and intention of this section." The decision so rendered is final.

The essential purpose of the amendment was to authorize, constitutionally, municipal financing of projects for manufacturing and industrial development purposes, by a city or incorporated town or village within any county having less than 400,000 inhabitants, by the issuance of its general obligation bonds (in an amount not exceeding ten per cent of the value of taxable tangible property in the municipality, and making §§ 26 (a), 26(b), 26(c), 26(d) and 26(e) of Article VI of the Missouri Constitution inapplicable to the indebtedness thereby incurred),

and to extend to projects of that nature of all cities, incorporated towns or villages (without limitation as to county population) the pre-existing scope of constitutionally authorized revenue bond financing for municipally owned utilities.

■ Manifestly, the 25-word limitation upon ballot titles imposed by § 125.030 was not observed, nor, we may add, do we appreciate how under the circumstances it would have been possible to have done so and at the same time obey the further and overriding mandate of the same section that the ballot title give a true and impartial statement of the purposes of the proposed amendment. In these circumstances, the foregoing title limitation provision should be held to be directory, and not mandatory, and that failure to comply with it, standing alone, is insufficient to invalidate the bonds.

■ To express the purpose of a proposed amendment under the terms of § 125.-030 is to focus attention upon and to make known the end to be achieved, not the details of the dependent enactive process involved. It was therefore unnecessary for the ballot title to state that proposed § 23(a) was a new section, and that proposed § 27 constituted an amendment of the existing section bearing the same designation.

■ We consider next the ground of assignment "(3)" against the ballot title. As will be seen, it does not on its face disclose wherein it is claimed there was any failure of the title to "state fully the proper meaning and effect of such amendment"; but the omission thus complained of is pinpointed or developed in the printed argument as meaning the failure to mention the provision that the indebtedness authorized by § 23(a), Article VI, is in addition to the indebtedness permitted by §§ 26(a), 26(b), 26 (c), 26(d) and 26(e) of the same article. The theory on which this proposition is advanced is, first, that the ballot title consisting of 85 words (60 more than the number prescribed by § 125.030) descended into particularities, and in view of these facts, and because of the importance to the voters

of the features of these omitted provisions, it is contended there is no justification for the failure of the ballot title to mention them. Secondly, it is urged that because rules of statutory construction are applicable in construing constitutional provisions, the general rules relating to titles to legislative acts should be applicable here; and consequently, because of having descended into particularities, but nevertheless failing to disclose the fact that the indebtedness authorized by § 23(a) of Article VI was in addition to the provisions of §§ 26(a)–26(e), both inclusive, of Article VI, the title was unfair and misleading and rendered void the purported adoption of the amendment.

We do not agree with either facet of the contention. In the very nature of things it is not contemplated that a ballot title to a constitutional amendment shall descend into particularities (as is permissible under some circumstances in legislative enactments). The contrary—brevity and directness—is the norm, as witness the word limitation fixed by statute. Condensed form of statement of the purpose of a proposed constitutional amendment (if otherwise complying with the statute and other rules in that regard) is desirable, if not indispensable, in facilitating the right of franchise by the average citizen.

In view of what seems to have been the virtually compelling necessity of exceeding the word limitation, it would have been prudent and justifiable for the title as thus prepared to have also made reference to those provisions the omission of which is now complained of; but even so, we are not persuaded that such omission rendered the title bad, unfair or misleading, nor made it subject to governance under rules relating to legislative bill titles.

◼ The validity of Amendment No. 4 is also attacked on the ground that its provisions are broader than its legislative title,[1] in that the latter refers only to authorizing municipalities to "acquire *and lease* properties for manufacturing and industrial development purposes," whereas § 1 of the amendment (now § 23(a), Article VI) provides that such properties may be "leased *or otherwise disposed of pursuant to law.*" (Emphasis supplied.)

The substance and effect of the argument made in support of this point is that titles to legislative resolutions and titles to legislative bills are on the same footing, and are to be judged by the same standards. Titles to legislative bills are governed by § 23, Article III of the Constitution, which provides that "*No bill* shall contain more than one subject which shall be clearly expressed in its title," etc., but we have not found such a provision applying specifically to titles of legislative resolutions. There would be less reason for critically eyeing the title of a legislative resolution submitting a constitutional amendment than there would be in the case of a bill. In the latter instance, when passed and approved, it becomes law by its own force; in the former, no such finality attaches, it having merely submitted the proposal to the electorate for consideration and determination by vote. And, to this end, the statute (§ 125.030) expressly provides that the "ballot title may be distinct from the legislative title of such proposed constitutional amendment * * *."

In any event, the legislative title did not descend into particularities, so even if the rule contended for by respondent were applicable, it will be seen that the title, although general, fairly embraces the subject matter covered by the amendment as a whole. Due to the differing provisions of the separate sections of the amendment, it would have been difficult to include a summary of each in a single legislative title without descending into particularities. In

1. "JOINT RESOLUTION submitting to the qualified voters of Missouri an amendment to Article VI of the Constitution of Missouri authorizing cities, towns and villages to acquire and lease properties for manufacturing and industrial development purposes and to authorize the incurring of indebtedness by cities, towns and villages for such purposes."

this connection, it is to be noticed that apart from the difference in the character of bonds respectively authorized by the two sections of the amendment, there is also a difference in their provisions with respect to the use and disposition of the plants. Those financed by general obligation bonds under § 23(a) are clearly made subject to being "leased or otherwise disposed of pursuant to law," whereas § 27 (which also embraces the subject of municipally owned utilities) provides for revenue bond financing for " * * * (2) plants to be *leased* to private persons or corporations for manufacturing and industrial development purposes * * *; *to be owned exclusively by the municipality*, the cost of operation and maintenance and the principal and interest of the bonds to be payable solely from the revenues derived by the municipality from the operation of the utility *or the lease of the plant.*" (Emphasis supplied.)

The overall purpose and intent of the amendment (that of authorizing municipal financing of plants for manufacturing and industrial development purposes) was sufficiently expressed in the legislative title, and the omitted matters are to be regarded as details not necessary to be included.

■ One of the several attacks upon the constitutional validity of the enabling act is directed against what is now § 71.850, which provides as follows: "Any municipality may sell or otherwise dispose of the property, or buildings or plants acquired under sections 71.790 to 71.850 upon approval by the division of commerce and industrial development. The terms and method of the sale or other disposal shall be established by the division."

It is charged that this section of the statute is "invalid, unconstitutional and void because such section provides for 'sale' of plants while the Constitution provides only for leasing or other disposition similar to leasing." We have just noted that § 23(a), Article VI—the section here directly involved—provides that industrial development properties may be "leased *or other-*

*wise disposed of pursuant to law.*" This language clearly comprehends and sanctions a sale (being a disposition otherwise than by leasing) if and when made "pursuant to law." The only concrete example cited of a "disposition similar to leasing" is "by renting the plants from month to month." While the similarity is striking, the example is not convincing. We think it too plain for argument that the construction respondent would have us place on the quoted language of § 23(a), Article VI, is too narrow and strained, and must be rejected.

■ A further charge of unconstitutionality is directed against the section because it purports to give municipalities the unrestricted right to dispose of plants to whomsoever the Division of Commerce and Industrial Development approves *without regard to the use to which they will be put,* whereas § 23(a), Article VI, limits the leasing or other disposal of said plants "to private persons or corporations *for manufacturing and industrial development purposes.*" Even if the section goes beyond the limits permitted by § 23(a) in the respect just mentioned, and we think it does, it does not follow that the bonds are invalid, this because the section is clearly severable, and without it a workable act remains. (This ruling, of course, eliminates the issue of whether said section is unconstitutional as constituting an invalid delegation of legislative power to the division.)

Also, as presently written, § 71.850 would seem to be bad as applied to the sale of plants financed by revenue bonds under § 27, Article VI, which section, on its face, appears to strictly limit the right of the municipality in disposing of industrial development plants to the one method therein specified, i. e., leasing them. "[P]lants to be *leased* to private persons or corporations for manufacturing and industrial development purposes," says § 27, Article VI, so if that language means what it seems to plainly say, the "sell or otherwise dispose of" provision of § 71.850 would be unconstitutional (except as to leasing) insofar as

applying to revenue bond financed plants. We make this observation in the light of the disposition made of the issue raised by relator as to the section's constitutionality, and as a caveat in the redrafting of any new or substitute legislative provision which that ruling may prompt.

Insofar as § 71.847 may be construed as authorizing the leasing of plants for other than industrial development purposes, it is ·subject to the same infirmity in that regard as was found in § 71.850, and what has just been said in that connection is applicable to, and governs the further claim that that portion of § 71.847 is constitutionally invalid.

There are several other provisions of the so-called enabling act which are broader than, or do not coincide with, some of the provisions of Amendment No. 4, for which reason it is urged that said sections are unconstitutional. For example, § 71.793 provides: "The municipality may carry out projects for industrial development under the terms of sections 71.790 to 71.850." By § 71.790, "municipality" is defined as meaning "any city, incorporated town or village of the state," and the term "project for industrial development" is defined by the same section as meaning "the purchase, construction, extension and improvement of industrial plants, including the real estate, buildings, fixtures, and machinery." The invalidity of § 71.793 is charged to lie in the fact that, by its terms, it is not limited to cities in counties of less than 400,000 population, which are the only cities authorized by § 23(a), Article VI, to "purchase, construct, extend or improve plants to be leased or otherwise disposed of pursuant to law to private persons or corporations for manufacturing and industrial development purposes." The issuance of general obligation bonds under said constitutional provision is limited as thus contended; however, this contention overlooks the fact that § 27, Article VI, with reference to the issuance of revenue bonds is not so limited, the language thereof being, "*Any* city or incorporated town or village * * * may issue and sell its negotiable interest bearing rev-

enue bonds," so the statute is consonant with this provision. Inasmuch as § 23(a) Article VI, applies only to cities in counties of less than 400,000, only those cities may issue bonds under it. El Dorado Springs is such a city. Accordingly, the failure to limit the operation of § 71.793 to such classification would not render the section unconstitutional.

We do not read §§ 71.793, 71.803, 71.807, 71.810 and 71.813 as permitting the purchase, construction or improvement of industrial plants by a mere majority vote of the governing body of a municipality in a county of less than 400,000. But if they do so, it is not contended that they authorize, independently of §§ 23(a) and 27, Article VI, which we have been considering the issuance of bonds (general obligation or revenue) for the purpose, and in this event there would be no conflict with either of said constitutional provisions. As respondent's challenge of the constitutional validity of these statutes under Point VI of his brief presupposes the meaning first above indicated, such challenge need not be discussed.

■ We find no unlawful delegation of legislative power in the provision of § 71.-827, italicized below, that after an election which results unfavorably to a proposition to issue either general obligation bonds or revenue bonds to finance a project which has been approved by the division, "*then no second or other election shall be ordered or held until the division determines that the election may be held.*" It is so assailed on the ground that the section sets no standards for determining the matter thus committed to its discretion. While it is true that the section itself does not set forth standards, yet when the act is viewed as a whole, we are of the opinion that it is to be implied that the standards required for the approval of the project in the first instance continue to relate to it, and hence the division is not wholly without a guide for the exercise of its discretion in determining when and if a proposal should be resubmitted.

Finally, it is claimed that the vote taken was only on the proposition for the issuance of general obligation bonds, and not on the question of authorizing the city to acquire the plant for which the bonds were voted; in other words, that two expressions of the voters are required, one on authorizing the project, and another on the issuance of bonds. We think the proposition as submitted on the ballot (the text of which is hereinabove set out) was all that was required.

The alternative writ should be made peremptory; it is so ordered.

All of the Judges concur.